RUTH L. WARSHAW and SAM S. WARSHAW, Plaintiffs-Appellants *v.* ROCKRESORTS, INC., et al., Defendants-Appellees

NO. 5679

MARCH 31, 1977

RICHARDSON, C.J., OGATA, J., KAWAKAMI,
Circuit Judge, for Kobayashi, J., disqualified,
CHANG, Circuit Judge for Menor, J., disqualified,
KATO, Circuit Judge, for Kidwell, J., disqualified

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal presents the question of whether or not evi-

dence of prior accidents was properly excluded by the trial court.[1]

On the afternoon of February 12, 1971, Ruth Warshaw was seriously injured in a golf cart accident at the Mauna Kea Beach Hotel's golf course. She and her husband sought damages from Rockresorts, Inc., and Eastern Pacific, Inc., dba Mauna Kea Beach Hotel (hereinafter both corporations are referred to as Mauna Kea) under the theory of negligence with respect to the design of the golf course and the continued use of allegedly defective golf carts. She and her husband also sought damages from Mauna Kea and Viking Corporation of South Bend, Indiana (hereinafter Viking), the manufacturer of the golf cart, under the theories of breach of warranty and strict liability with respect to the rental and sale of the allegedly defective golf cart.[2]

The case was tried and submitted to the jury under all of the Warshaws' theories. The jury found that neither Mauna Kea nor Viking was liable to the Warshaws. It additionally found that Ruth Warshaw was negligent and her negligence was a proximate cause of her injuries. Judgment was entered in conformity with the verdict. The following description of the accident will assist in understanding the discussion of the question presented.

On the day of the accident, Mrs. Garth, accompanied by Mrs. Warshaw, was driving on the golf cart path from the elevated tee of the 18th hole toward the fairway below. The path descended at a slope of seven to nine degrees and was approximately 500 feet long. Three ninety degree turns were located on the path, and each turn's outer radius was bordered by a lava rock wall. Five speed bumps were located

---

[1] We find appellants' other contentions to be without merit and therefore limit our discussion to the question presented by the trial court's exclusion of the evidence of prior accidents.

[2] The Warshaws additionally sought damages from Dorothy Garth, Mrs. Warshaw's golf partner and the driver of the cart. All complaints against her and counterclaims by her were dismissed during the trial.

across the upper portions of the path to require drivers to slow down.

The golf cart rented by the women from Mauna Kea had been purchased from Viking. It had three wheels, was powered by batteries, steered with a tiller and accelerated and braked with a single "L" shaped pedal pivoting at the convergence of the two sides of the "L". The cart was accelerated by applying foot pressure to the top of the pedal thereby disengaging an automatic internal expanding brake. After acceleration the cart was brought to a stop by releasing foot pressure from the top of the pedal. A quick release produced a quick stop while a gradual release produced a gradual stop. The cart could also be quickly stopped by applying heel pressure to the base of the pedal.

Mrs. Garth stopped at four of the five speed bumps and proceeded over each. The testimony of Mrs. Garth and Mrs. Warshaw as to what occurred at the final speed bump was conflicting. Mrs. Garth testified that Mrs. Warshaw attempted to show her how to negotiate the speed bump without stopping. She said that Mrs. Warshaw extended her left foot, touched the throttle, and the cart picked up speed. Mrs. Warshaw said she never placed her foot on the accelerator portion of the pedal.

Both women agreed as to what occurred after the cart passed the last speed bump. The cart picked up speed, and they attempted to stop it by heeling the pedal. After nothing happened Mrs. Garth yelled "we have no brakes." The cart glanced off the lava rock wall bordering the last turn's outer radius, and both women were thrown out of the cart.

I

During the pretrial conference the Warshaws sought permission to offer sixty-two accident reports into evidence. The reports were prepared by Mauna Kea's employees and described golf cart accidents that occurred between 1967 and the Warshaw accident. Each report was offered to prove that

an accident occurred. All of the defendants objected on the grounds that the reports were irrelevant, immaterial, prejudicial, would unduly consume time and contained inadmissible hearsay. They additionally objected because the similarity of the prior accidents to the Warshaw accident could not be shown or could not be shown by competent evidence. The trial court ruled that the reports were inadmissible and indicated that its concern was about the objection based on hearsay and the Warshaws' failure to show sufficient similarity. We address the subsidiary question of whether the trial court erred in excluding the reports.

The Warshaws contended that the fact that each accident occurred was relevant to show that Viking golf carts were inappropriate for the golf course, the use of the carts on the course created a dangerous situation and Mauna Kea knew or should have known of the danger. We would concur if the conditions of the previous accidents were shown to be sufficiently similar to the conditions of the Warshaw accident. The degree of similarity required is discussed after our discussion of the exclusion of the reports on the ground that they contained inadmissible hearsay.

The Warshaws conceded that all the reports contained hearsay, statements of a Mauna Kea employee, and many reports contained double hearsay, a statement of a person involved in a golf cart accident within a statement of a Mauna Kea employee. All the statements in each report were offered to circumstantially prove that an accident occurred. Each statement would have been circumstantial proof that an accident occurred only if it had been admitted for the truth of the matter asserted. But the Warshaws inconsistently claimed that statements of persons involved in golf cart accidents are not offered for the truth of the matters asserted. Because these statements were offered for no purpose other than to circumstantially prove that an accident occurred, we consider their admissibility for the truth of the matters asserted despite the Warshaws' inconsistent claim. Otherwise, these statements are immaterial, therefore inadmissible.

The Warshaws offered each report solely under the statutory business records exception to the hearsay rule. HRS § 622-5 (Supp. 1975),[3] provides that:

A record of an act, condition, or event shall insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court or person having authority to hear, receive and examine evidence, the sources of information, method, and time of preparation were such as to justify its admission.

The term 'business' includes every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

This is the Uniform Business Records as Evidence Act (modified).

If Harold Ragland, Mauna Kea's director of golf activities, had been given the opportunity, he would have testified to the identity and mode of preparation of the reports. Ragland did testify that as a regular course of business his office was required to make and forward a report of every accident that occurred on the golf course. The reports served as verification of claims by or against Mauna Kea and promoted the efficient operation of the golf course. They were prepared soon after each accident. We conclude that, insofar as relevant, the reports satisfied the statutory requirements for admissibility, but the statute gives authority to a trial court to exclude the evidence if it is not of the opinion that the sources of information, method and time of preparation were such as to justify its admission.

---

[3] We are not discussing a case where a record is offered under the statute merely to prove that statements themselves were reported to an entrant, and the statements are offered under an exception to the hearsay rule other than the business records exception to prove the truth of the matters asserted. See Fagan v. Newark, 78 N.J. Super. 294, 320, 188 A.2d 427, 440-1 (Super.Ct. App. Div. 1963) and McCormick's Handbook on the Law of Evidence 725-6 (2d ed. 1972).

Under the statute, if the evidence is relevant and if the statutory requirements for admissibility have been met, the admission of the evidence is within the discretion of a trial court. The trial court should consider the need for the evidence and the circumstantial probability of its trustworthiness. With respect to its trustworthiness, the trial court should consider the sources of information, method and time of preparation of the evidence.

Other courts interpreting the Uniform Business Records as Evidence Act have concluded that when an entrant of a record records facts observed and reported by another without a business duty to observe and report the facts, the record will be inadmissible as proof of the facts. *See Taylor v. Centennial Bowl, Inc.*, 65 Cal.2d 114, 126, 416 P.2d 793, 801, 52 Cal. Rptr. 561, 569 (1966) (dictum); *Fagan v. Newark*, 78 N.J. Super. at 319, 188 A.2d at 440; McCormick's, Evidence, *supra* note 3 at 726. This source of information requirement, that an entry be based on facts observed and reported by one with a business duty to observe and report such facts, reasonably assures the trustworthiness of the entry. We conclude that a trial court would abuse its discretion by ruling that an entry based on facts observed and reported by one without a business duty to observe and report such facts is admissible as proof of the facts.

The Warshaws state that information contained in most reports was received and recorded by a Mauna Kea employee at the pro shop as persons involved in golf cart accidents returned and reported the information there. Although some of the reports reveal that the entrant observed either the condition of the person involved in a golf cart accident or the condition of a golf cart after an accident or both, all the reports fail to indicate that the entrant observed how the accident occurred. Sixty-one of the sixty-two reports offered contain facts as to how the accident occurred. These facts were either asserted in recorded statements of persons involved in golf cart accidents or must have been reported by persons involved in golf cart accidents and summarized by Mauna Kea employees preparing the reports. The form in

which they appear in each report is insignificant. However, none of the persons involved in the sixty-one golf cart accidents had a business duty to observe and report how the accidents occurred. We believe that the trial court properly concluded that these facts were inadmissible.

In *Territory v. Honda,* 31 Haw. 913, 918-9 (1931), we stated that

> . . . when an offer of proof includes that which is admissible with that which is not, and the competent and incompetent are blended together, it is not the duty of the court to separate the legal from the illegal, but the whole may be rejected without commission of error. 6 Jones on Evidence. 4999.

*Accord, State v. Okura,* 56 Haw. 455, 460, 541 P.2d 9, 12 (1976) (dissenting opinion). *Honda* and *Okura* are criminal cases, but this general rule is equally applicable to civil cases. *See* Annot., 89 A.L.R.2d 279, 306 (1963).

The trial court properly concluded that the report entries as to how sixty-one accident reports occurred were inadmissible, and the Warshaws offered these reports without deleting these entries. We hold that the trial court did not err in excluding the sixty-one reports on the ground that they contained inadmissible hearsay.

The remaining report describes Mr. and Mrs. Fuhr's accident and indicates that the facts contained therein were observed and recorded by William De Sa, Mauna Kea's pro shop manager.[4] Since De Sa had a business duty to observe

---

[4] The accident report was written exactly as follows:

Sept. 30, 1969

To Mr. Koltz

Re - Cart Accident on Golf Course
Mr & Mrs. Fuhr Room 305
Cart No. 41 Type Viking
Time 4:30  9,30 - 69

Mr Fuhr Playing Golf Mrs Fuhr Not playing

Accident happened 18th fair way. Mr & Mrs Neitzel Room 611 on Cart #33. Gave their Cart to Mr & Mrs Fuhr to Drive Back to the Pro Shop. Peter Abarcar & Rodge Bagarena Pro Shop Attendant Drove than to Security Area. Security took over from their.

I made check of Cart and Area that accident accident happen gave report to security. Will have the Cart Mechanic Check Cart.

s/  De Sa

and report the facts, this report was not excludable for the reasons justifying exclusion of the other sixty-one reports.

In considering whether the sources of information recorded are trustworthy, a trial court should also consider whether the sources had a motive to misrepresent the information. *Fagan v. Newark*, 78 N.J. Super. at 320, 188 A.2d at 441. There is no indication that De Sa had a motive to misrepresent the facts he recorded.

We are of the opinion that the method and time of preparation of the Fuhr report were such as to justify its admission. De Sa was required to prepare the report as a regular course of his duties, and it was prepared within a few hours after the accident.

Even though the Warshaws overcame the hearsay rule with respect to the Fuhr report,

> [b]efore evidence of previous . . . [accidents] may be admitted on the issue of whether or not the condition as it existed was in fact a dangerous one, it must first be shown [by the proponent of the evidence] that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.
>
> * * * *
>
> The strictness of this requirement of similarity of conditions is 'much relaxed, however, when the purpose of the offered evidence is to show notice, since all that is required here is that the previous . . . [accident] should be such as to attract the defendant's attention to the dangerous situation which resulted in the litigated accident.'

*Laird v. T. W. Mather, Inc.*, 51 Cal.2d 210, 220, 331 P.2d 617, 623 (1958) (citations omitted). McCormick, Evidence, *supra* note 3 at 475 (similarity requirement relaxed when evidence offered to prove notice).

Furthermore, even when sufficient similarity is shown, the admission of evidence of prior similar accidents is within the discretion of a trial court. *Morrison v. Ted Wilkerson, Inc.*, 343 F.Supp. 1319, 1326 (W.D. Mo. 1971), *see Robitaille v. Netoco Community Theatres*, 305 Mass. 265, 268, 25

N.E.2d 749, 750, 128 A.L.R. 592 (1940); *accord, P.B. Mutrie Motor Transportation, Inc. v. Interchemical Corp.*, 378 F.2d 447, 450-1 (1st Cir. 1967) (citing *Robitaille* with approval). Evidence of prior similar accidents may be excluded if the danger of unfair surprise, prejudice, confusion of the issues or the consideration of undue consumption of time is disproportionate to the value of the evidence. *Compare Nelson v. Brunswick Corp.*, 503 F.2d 376, 380 (9th Cir. 1974) *with Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir. 1965).

If the Fuhr report was admissible to prove notice of the alleged dangerous condition under the less strict similarity requirement, we will consider its admissibility to prove the alleged dangerous conditions under the stricter similarity requirement.

Although the Fuhr accident and the Warshaw accident occurred on Mauna Kea's golf course and involved Viking golf carts, the Fuhr report fails to indicate any other similarities between the two accidents. If the Fuhr report had revealed similarities as to location and cause of the accident, the trial court may have had a sufficient basis to determine whether the Fuhr accident was such as to attract Mauna Kea's attention to the allegedly dangerous situation that caused the Warshaw accident. We hold that the trial court did not err in excluding the Fuhr report on the ground that the Warshaws failed to show sufficient similarity. We do not reach the question of whether sufficient similarity was shown to render the report admissible to prove the alleged dangerous conditions and if sufficient similarity was shown, whether the trial court abused its discretion in excluding the report.

II

After the jury was impaneled but before the opening statements of counsel, the Warshaws sought permission from the trial court to elicit from some witnesses that there were prior accidents on the golf cart path (18th tee to the fairway)

for the purpose of notification to the defendants. Viking objected on the ground that the evidence was irrelevant. The trial court sustained the objection. The final subsidiary question we address is whether the trial court erred in sustaining the objection.

As stated previously, the proponent of evidence of prior accidents offered to show · notice has the burden of establishing sufficient similarity of conditions between the prior accidents and the accident in question before the evidence may be admitted. The Warshaws did not establish any similarity of conditions at this time. The record reveals that the trial court indicated that it might reconsider the admissibility of the testimony offered if the Warshaws subsequently established similarity of conditions.[5] We hold

---

[5] THE COURT: Well, I'll say this: There's different ways of showing notice, but in this particular case it would be objectionable. I'm going to sustain the objection.

MR. SCHNEIDER: And, now, so the ruling, so we understand, the ruling is that he will not be permitted to ask questions of witnesses regarding prior accidents, is that right?

THE COURT: Prior accidents. Prior accidents.

MR. GREENSTEIN: Now, that — wait a minute. I'm not —

THE COURT: Go ahead.

MR. GREENSTEIN: That is not necessarily the result of your ruling.

THE COURT: If you can show similarity of conditions, what have you, I suppose you might ask for reconsideration.

MR. GREENSTEIN: You cannot foreclose me at a proper time when I think it's proper to go into that subject matter. If the posture of the situation permits it.

THE COURT: Right.

MR. SCHNEIDER: Well, the reason that we asked for this meeting this morning is I wanted to make a motion to the effect that he not be permitted to ask a witness about prior accidents. Now, if he can develop it in some way that I can't imagine, that's one thing.

THE COURT: If he can lay a proper foundation, for one thing.

* * * *

THE COURT: Wait just a second. Just so we know where we're heading, the, this ruling, of course, you've got to understand is a ruling upon a, a general objection and certainly there, if it should turn out as Mr. Greenstein has indicated, that the posture of the situation makes such evidence admissible, then certainly the Court would not be foreclosed from, from possibly ruling in his favor. That's the point. I don't know whether — Maybe I misunderstand you, Mr. Schneider, but it would appear to me that you're asking me to make a ruling that will cover all possible —

MR. GREENSTEIN: Right.

THE COURT: — situations. That's, that's where I can't go along with you.

that the trial court did not err in sustaining the objection to the testimony offered.

Evidence of prior accidents was never admitted, but the trial court ruled that evidence of prior complaints of brake trouble in Viking carts on the 18th hole cart path between October 1967 and the Warshaw accident were admissible. Subsequently, all parties stipulated that there were nine such complaints, two of which the record indicated a basis for the complaints. The stipulated facts were presented to the jury.

Affirmed.

*Hyman M. Greenstein (James A. Wagner* with him on the briefs) for appellants.

*William L. Fleming (Cades Schutte Fleming & Wright,* of counsel, *Peter C.-P. Char* with him on the brief) for Rockresorts, Inc., et al.

*Joseph Schneider (Conklin & Schneider,* of counsel) for Viking Corporation.