AMERICAN BROADCASTING COMPANIES, INC. and APPALACHIAN INSURANCE COMPANY, Plaintiffs-Appellees, *v.* KENAI AIR OF HAWAII, INC., an Alaska corporation, Defendant-Appellant, and KENAI AIR OF HAWAII, INC., an Alaska corporation, Third-Party Plaintiff, *v.* TEXTRON, INC. and GENERAL MOTORS CORPORATION, Third-Party Defendants

NO. 8939

(CIVIL NO. 53473)

JUNE 25, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

220

## OPINION OF THE COURT BY NAKAMURA, J.

Defendant-appellant Kenai Air Service, Inc. (Kenai) appeals from a circuit court judgment holding it responsible for the loss of expensive video equipment, of which Plaintiff-appellee American Broadcasting Companies, Inc. (ABC) was the bailee. The loss occurred when a Bell 206 B helicopter owned by Kenai but hired for the occasion by ABC fell into the ocean while a team of ABC technicians was engaged in filming scenic views for showing during the telecast of a Hula Bowl game. Kenai asserts the trial court erred in (1) excluding evidence of purportedly similar accidents and action allegedly taken to correct a defect in the same model of helicopter, (2) refusing to permit an aircraft mechanic employed by Kenai to give his opinion on the cause of the mishap, and (3) denying Kenai's motion to reduce the amount of the judgment by sums paid by other defendants in settlement of the loss sustained by ABC and its insurer, Plaintiff-appellee Appalachian Insurance Company (Appalachian).[1]

From a review of the record, we are convinced the trial court should have allowed evidence of similar accidents and remedial measures to be presented to the jury. But we find no good reason to disturb the trial court's rejection of the testimony Kenai sought to elicit from the mechanic on what may have caused the helicopter to unexpectedly lose altitude and drop into the waters near Diamond Head.

---

[1] In view of our conclusion that the trial court committed reversible error in evidentiary rulings, we do not reach this issue.

I.

On January 6, 1976, ABC cameramen using borrowed equipment were occupied in filming scenic shots of Hawaii for mainland television viewers when the helicopter piloted by a Kenai employee fell and sank off the Waikiki shore. Although an official investigation was conducted, it apparently reached no definitive conclusion on what caused the aircraft to plummet into the ocean. The misadventure resulted in the destruction of the video equipment, and ABC to whom it had been entrusted became obligated to remedy the loss suffered by the owners.

Consequently, ABC and Appalachian, who had indemnified ABC in part for what it was obliged to pay, brought a tort action against Kenai in the Circuit Court of the First Circuit, alleging *inter alia* that Kenai "negligently operated a helicopter" and "cause[d] it to crash and sink into the ocean off Waikiki". The complaint prayed that ABC be awarded "not less than $50,000" in damages and Appalachian be awarded $88,748.94. Kenai responded with an answer denying all allegations of negligence and with a third-party complaint against the manufacturer of the ill-starred Bell 206 B helicopter, Textron, Inc., and the manufacturer of its Detroit Allison engine, the General Motors Corporation, charging that they, not Kenai, were liable for the damages. Subsequently, the manufacturer of the aircraft's fuel control system, Chandler-Evans Company, was also named a third-party defendant.

The issues in the case were joined by the pleadings that followed, which included a number of cross-claims and counter-claims wherein the defendants charged each other with fault and liability. The plaintiffs, however, eventually effected settlements with the manufacturers of the helicopter and its components and proceeded to trial only against Kenai, its operator.

Claiming the accident was the result of the negligent manufacture of the helicopter or an inherent defect in the design of the craft's fuel and power systems rather than pilot error as plaintiffs maintained, Kenai sought at trial to introduce evidence of purportedly similar incidents involving Bell 206 B helicopters. It also offered evidence of corrective action allegedly taken by the manufacturers with respect to the fuel system and engine of the model in question. The proffered proof consisted of testimony recorded

during the pre-trial depositions of several engineers employed by the manufacturers and an investigator formerly associated with the National Traffic Safety Board.[2]

But the trial judge, citing *Warshaw v. Rockresorts, Inc.,* 57 Haw. 645, 562 P.2d 428 (1977), as controlling precedent, thwarted Kenai's attempts to submit the deposition testimony for jury consideration by ruling the evidence inadmissible. He indicated a similarity in circumstances sufficient to ascribe notice of a defect to the manufacturers or to establish the existence of a flaw had not been shown. He further ruled that evidence of remedial measures undertaken by the manufacturers could not be used as proof of negligence or the presence of a prior defect.

Kenai's effort to adduce evidence relating to the possible cause of the accident through a mechanic in its employ who had serviced the aircraft prior to the accident was also stymied by an adverse ruling on admissibility. His testimony, however, was rejected on grounds that he had not been designated an expert and the sum-

---

[2] The following offer of proof was made by counsel:

MR. CHANIN: Your Honor, at this time, as a result of the conversation that I had with Mr. Conklin, based upon this Court's inclination at our hearing this morning, out of the presence of the jury at this time I would like though [sic] make an offer of proof. The offer will be as follows: Your Honor, I would offer to read into evidence a substantial portion of the depositions of the following people: Mr. Gallagher, engineer with Chandler Evans, Mr. Swingle, is an engineer at Detroit Allison, Mr. Black, who had been an investigator with the NTSB and subsequently involved in this case in a private investigatory capacity. Mr. Kaiser, who is an engineer with Bell [H]elicopter design. Mr. Fleming who is an engineer in the Bell product support division. Mr. Gill, who is an engineer with Bell. Mr. Cragun, who is a fuel system engineer from Detroit Allison. If they were to testify, they would all substantially testify with respect to the *loss of power incident* and accident relating to the Bell 206 B primarily, all of which contained the Chandler Evans-Textron engine — sorry, Chandler Evans fuel system I think inside of the Detroit Allison engine which is in turn linked into the Bell helicopter. As I indicated, that's what they would testify to. They would also testify that there were complaints of these that were made. That [sic] was a meeting in March of 1976 between representatives of these three companies together with Mr. Tysdal, president of the Petroleum Helicopter. As a result of this meeting and other incidents, there was corrective action taken with respect to the fuel system and the overall Detroit Allison engine system. I offer to read those depositions and too, I will offer that as evidence in this case.

Trial Transcripts, Vol. 4, at 67-68 (emphasis added).

mary offered of what he would say indicated it would actually be in the nature of "expert testimony."

At the close of trial, the jury returned a verdict finding Kenai's negligence was the cause of the accident and the damages sustained by the plaintiffs amounted to $148,163.81 as claimed.[3] Kenai moved thereafter to reduce the judgment by the $70,000 the plaintiffs had previously received in settlement from the manufacturers, but the motion was denied. Its timely appeal to this court followed.

## II.

Kenai initially argues the trial judge erred when he did not permit the jury to consider evidence of other incidents of like character that might have established negligence in the manufacture of the Bell 206 B helicopter or a flaw in its design. We have to agree that the strictures of *Warshaw v. Rockresorts, Inc., supra,* were misapplied in this instance.

### A.

*Warshaw* "present[ed] the question of whether or not evidence of prior accidents was properly excluded by the trial court." *Id.* at 645-46, 562 P.2d at 430. Mrs. Warshaw, who was injured in a golf cart accident at the Mauna Kea Beach Hotel, and her husband sued the resort hotel and the manufacturer of the errant vehicle, relying on theories of liability sounding in negligence, breach of warranty, and strict tort liability. *Id.* at 646, 562 P.2d at 431. At the pre-trial conference, the plaintiffs apprised the court and the defendants that sixty-two reports containing accounts of prior golf cart accidents at the resort would be offered as evidence at trial. The reports had been prepared by employees of the hotel from verbal accounts of the accidents furnished by guests. The defendants voiced a host of objections, among them a specific one that a similarity in the circumstances surrounding the earlier incidents and the Warshaw incident could not be demonstrated. The trial court

---

[3] Since the evidence of other accidents Kenai sought to have the jury consider was rejected, no instruction regarding the possible negligent manufacture of the helicopter or design defect was imparted to the jury.

ruled the reports were inadmissible as evidence, expressing "its concern about the objection based on hearsay and the Warshaws' failure to show sufficient similarity." *Id.* at 648, 562 P.2d at 432.

When the case reached us on appeal after judgment had been entered for the defendants on the basis of a jury verdict in their favor, we saw no error in the trial court's exclusion of sixty-one of the reports on grounds "that they contained inadmissible hearsay." *Id.* at 651, 562 P.2d at 433. We further concluded the lone report reflecting an actual observation of an accident by an employee would have been admissible if his account thereof revealed a factual similitude between the earlier accident and that in which Mrs. Warshaw was injured.[4] Implicit in our conclusion was the rejection of a hard and fast rule excluding evidence of other accidents, for we realized "[a] blanket rule of irrelevance is manifestly incompatible with modern principles of evidence." *Simon v. Town of Kennebunkport,* 417 A.2d 982, 985 (Maine 1980).

That "the introduction of other-accident evidence may carry with it the problems associated with inquiry into collateral matters," *id.,* however, did not escape us. Thus, we also issued a caveat that:

[b]efore evidence of previous . . . [accidents] may be admitted on the issue of whether or not the condition as it existed was in fact a dangerous one, it must first be shown [by the proponent

---

[4] The entire accident report submitted by the employee was as follows:

Sept. 30, 1969

To Mr. Koltz
Re - Cart Accident on Golf Course

Mr & Mrs. Fuhr Room 305 Cart No. 41 Type Viking Time 4:30 9,30 - 69

Mr Fuhr Playing Golf Mrs Fuhr Not playing
Accident happened 18th fair way. Mr & Mrs Neitzel Room 611 on Cart #33. Gave their Cart to Mr & Mrs Fuhr to Drive Back to the Pro Shop. Peter Abarcar & Rodge Bagarena Pro Shop Attendant Drove than [sic] to Security Area. Security took over from their [sic].

I made check of Cart and Area that accident accident [sic] happen[ed] gave report to security. Will have the Cart Mechanic Check Cart.

s/ De Sa

*Id.* at 651 n.4, 562 P.2d at 433-34 n.4. Hence, we agreed with the trial court that no showing of sufficient similarity had been made.

of the evidence] that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.

*Warshaw v. Rockresorts, Inc.,* 57 Haw. at 652, 562 P.2d at 434 (quoting *Laird v. T. W. Mather, Inc.,* 51 Cal. 2d 210, 220, 331 P.2d 617, 623 (1958)). And we went on to say, "even when sufficient similarity is shown, the admission of [such] evidence . . . is within the discretion of a trial court." *Id.* at 652, 562 P.2d at 434 (citations omitted). "Evidence of prior similar accidents," we explained, "may be excluded if the danger of unfair surprise, prejudice, confusion of the issues or the consideration of undue consumption of time is disproportionate to the value of the evidence." *Id.* at 653, 562 P.2d at 434 (citations omitted). *Cf.* Rule 403 of the Hawaii Rules of Evidence (Haw. R. Evid.).[5]

### B.

Here, Kenai attempted to counter evidence presented by the plaintiffs that pilot error, not mechanical failure, was responsible for the crash with evidence of prior accidents involving Bell 206 B helicopters powered by Detroit Allison engines whose fuel systems were produced by Chandler-Evans. Its purpose in tendering the deposition testimony deemed objectionable was to demonstrate the manufacturers had created a dangerous situation; it was trying to show the helicopter or a component was defective or that there was negligence in manufacture or in the design, manufacture, or assembly of a component.[6] Kenai therefore assumed a burden imposed by *Warshaw* of demonstrating "that the conditions under

---

[5] Rule 403 of the Haw. R. Evid., which were adopted after *Warshaw* was decided, provides:

> Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[6] Kenai's pre-trial statement delineated the disputed facts in the case as follows:
1. Whether Kenai was negligent in the maintenance and operation of the helicopter.
2. Whether the helicopter or any of its components was defective.
3. Whether any of the manufacturers of the helicopter and its component parts was negligent in the design, manufacture or assembly of the helicopter or

which the alleged previous accidents occurred were the same or substantially similar to the one in question." 57 Haw. at 652, 562 P.2d at 434. We think the burden was met.

A basis for Kenai's assertion of non-liability was the strict tort liability imposed on manufacturers of products — it maintained throughout that there was an inherent defect in the Bell 206 B. Of course, "this in no way dispense[d] with the requirements of proof that the [aircraft] was in some way defective." *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 75, 470 P.2d 240, 243 (1970). But "[t]he nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies." *Id.* at 76, 470 P.2d at 243. And "[c]ircumstantial evidence is certainly admissible to establish a defect and the fact that it caused the accident." *Id.* at 77, 470 P.2d at 244.

Since no expert "pinpoint[ed] the defect and . . . [gave] his opinion on the precise cause of the accident," *id.* at 76, 470 P.2d at 243, Kenai structured its case on circumstantial evidence. The theory espoused to controvert opinion evidence pointing to pilot error as the reason for the accident was that a sudden loss of engine power, which the pilot could not explain, led to the crash. It therefore strived to bolster his testimony with evidence of prior or contemporaneous incidents of unexplained power failures gathered in the course of pre-trial discovery. As counsel indicated to the trial court:

> We're concerned about wanting to establish there was inherent defect, product liability defect in the system. Namely, in the engine and in the fuel system. To establish that we want to be able to establish that in a period of time immediately surrounding this accident, '75 through March of '76, one tests even Warshaw in terms of sufficient similarity, the key is time. There were number of unexplained power failures.

Trial Transcripts, Vol. 4, at 4. The instances of inexplicable power loss covered by the deposition testimony all involved a "206 B [heli-

---

its component parts.

4. The cause of the helicopter's crashing into the ocean.

5. The nature, description and value of the equipment claimed to have been lost by ABC as a result of the crash.

copter] with the same Chandler Evans fuel system and the same Detroit Allison engine."[7]

In our opinion, "the conditions under which the alleged previous accidents occurred were . . . substantially similar to the one in question," *Warshaw v. Rockresorts, Inc.*, 57 Haw. at 652, 562 P.2d at 434, and it can be argued that the evidence is "capable of yielding 'an inference that there was a defective condition which caused the accident.' " *Wakabayashi v. The Hertz Corp.*, 66 Haw. 265, 270, 660 P.2d 1309, 1313 (1983) (quoting *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. at 77, 470 P.2d at 244).[8] Moreover, there would have been no danger of unfair surprise or undue prejudice associated with the reception of the evidence; nor can we say a reading of relevant portions of the depositions would have confused the issues or that the time it would have consumed was disproportionate to the value of the evidence. *Warshaw v. Rockresorts, Inc.*, 57 Haw. at 653, 562 P.2d at 434; *see also* Rule 403 of the Haw. R. Evid. Under the circumstances, the trial court's refusal to allow the jury to hear the evidence of substantially similar instances of alleged power failure

---

[7] Counsel's response to the trial court's inquiry on whether the proposed testimony related to the same type of aircraft was:

> MR. CHANIN: Same type. 206 B with the same Chandler Evans fuel system and the same Detroit Allison engine. The same, the same, the same. They had a history of these things going down. As a matter of fact change[d] the entire system to get rid of certain defects that he thought were causing the problem. That's where I bring you in testimony because our case is based upon the fact that there was an inherent defect. There was a fellow named Tisdale from petroleum helicopter who within two months time of this accident was in meeting with these people because the helicopter kept going out of the sky, Bell 206 B. They all had Chandler Evans. They all had the Detroit Allison engine. You can tell me, yes, one was over land, one was over the ocean, one was up here, one down here. The fact of the matter is if you are in a helicopter, same helicopter with same engine, and the same fuel system and you pull on the collective and goes down, everything is fine. Suddenly, boom, goes down. Those are only significant similarities. And so the expert will testify.

Trial Transcripts, Vol. 3, at 178-79.

[8] The pilot testified he exercised due care in piloting the helicopter. It certainly can be argued that a carefully piloted aircraft would not fall into the ocean, any more than a carefully driven automobile would leave the road, in the absence of a defect. *See* Stewart v. Budget Rent-A-Car Corp., 52 Haw. at 76 n.5, 470 P.2d at 244 n.5.

on grounds that *Warshaw* prevented its introduction amounted to an abuse of discretion.

## C.

The trial court also rejected Kenai's offer of proof related to measures allegedly taken to remedy the problem of unexpected power failures in the particular model of aircraft. We think the court erred in this respect too — the evidentiary rule governing the introduction of such proof specifically provides that evidence of subsequent remedial measures, though generally inadmissible, is not necessarily excludable when offered in substantiation of the presence of a dangerous defect in a product. The applicable rule reads:

> Subsequent remedial measures. When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving dangerous defect in products liability cases, ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Rule 407, Haw. R. Evid. The drafters' Commentary following the rule lends further support to our conclusion, for it reads in pertinent part:

> In Hawaii, under Stewart v. Budget Rent-a-Car Corp., 52 H. 71, 75, 470 P.2d 240, 243 (1970), a manufacturer, seller, or lessor is strictly liable in products liability cases provided there is proof of "a defective product which is dangerous to the user or consumer or to his property." Evidence of subsequent remedial measures is admissible under this rule to prove such a defect.

The evidence was therefore relevant and otherwise admissible; it should not have been excluded. *See* Rule 401, Haw. R. Evid., and *Warshaw v. Rockresorts, Inc., supra.*

## III.

The appellant next argues the trial court erred in excluding testimony about possible causes of the mishap that it sought to elicit

from the mechanic who had regularly serviced the ill-fated heli-copter. But we observe no abuse of discretion here.

Kenai failed to designate the mechanic as an expert witness prior to trial. Yet when called to testify, he was examined at great length about his knowledge of aviation mechanics. The trial court nonetheless ruled the neglect in designating him an expert witness beforehand prevented his qualification as such and excluded his views on how the crash might have occurred. Kenai does not raise the withholding of expert status as error; instead, it contends Rule 701, Haw. R. Evid., sanctions the receipt of opinion testimony from a lay witness in given situations, including the one at hand.[9]

To be sure, opinion testimony from a layman is not precluded in all instances. The applicable rule of evidence vests the trial court with discretion to permit such testimony where it is based on first hand knowledge and may be helpful to the trier of fact in the determination of a fact in issue. *See* Rule 701, Haw. R. Evid. and Commentary following Rule 701. In this instance, however, we cannot say the requisites of admissibility were satisfied.

The record discloses the witness participated in the salvage of the damaged helicopter; but it does not reveal that he was involved in the disassembly of any of its components. Thus, his opinion that a defect in the fuel system or some other component may have caused the crash would not have been premised on first hand knowledge. It would, of course, have been speculative, and it might have invaded the province of the jury. *See First Insurance Co. v. International Harvester,* 66 Haw. 185, 193, 659 P.2d 64, 70 (1983); *Friedrich v. Department of Transportation,* 60 Haw. 32, 38, 586 P.2d 1037, 1041 (1978); *Bachran v. Morishige,* 52 Haw. 61, 67, 469 P.2d 808, 812 (1970); *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 92-93, 412 P.2d 669, 681 (1966). The opinion testimony was properly excluded.

---

[9] Rule 701, Haw. R. Evid., reads:

Opinion testimony by lay witnesses. If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

## IV.

The earlier conclusion that the trial court committed reversible error in denying Kenai's offer of proof regarding prior accidents and remedial measures renders it unnecessary for us to decide the final issue raised by Kenai. But we think it appropriate to remind the litigants that the Uniform Contribution Among Joint Tortfeasors Act (now codified as HRS §§ 663-11 to 663-17) does not alter "the settled rule that ' * * * there shall be but one satisfaction accorded for the same wrong.' (*Jacobsen v. Woerner,* 149 Kan. 598, 89 P.[2d] 24, 28)." *Ginoza v. Takai Electric Co.,* 40 Haw. 691, 718 (1955).

The judgment against Kenai is vacated and the case is remanded for retrial.

*John A. Chanin* for appellant.

*Daral G. Conklin (Conklin, Schneider & Love,* of counsel) for appellees.