908 P.2d 552

**Michael J. PAGE, Plaintiff–Appellee/Cross–Appellant,**

v.

**DOMINO'S PIZZA, INC., Defendant–Appellant/Cross–Appellee,**

and

**Doe Defendants 1–25, Defendants.**

No. 16525.

Intermediate Court of Appeals of Hawai'i.

Dec. 12, 1995.

Sidney K. Ayabe and Rodney S. Nishida (Ayabe, Chong, Nishimoto, Sia & Nakamura, of counsel), on the briefs, Honolulu, for defendant-appellant/cross-appellee.

Earl I. Anzai, Law Offices of Earl I. Anzai, on the briefs, Honolulu, for plaintiff-appellee/cross-appellant.

KIRIMITSU, Judge.

In this negligence case, Defendant–Appellant/Cross–Appellee Domino's Pizza, Inc. (Domino) appeals from: (1) the September 9, 1992 Judgment (Judgment) in favor of Plaintiff–Appellee/Cross–Appellant Michael Page (Page) and against Domino for $645,000 in special damages and $195,000 in general damages; and (2) from the circuit court's October 20, 1992 Order Denying Defendant Domino's Pizza, Inc.'s Motion for New Trial. Domino claims that the trial court erred in denying its motion in limine to exclude evidence of prior incidents involving the collapse of two other stools in the same Domino's store and in subsequently allowing admission of such evidence over objection.[1] We affirm.

Page cross-appeals challenging the trial court's October 20, 1992 Order Denying Plaintiff's Motion for Prejudgment Interest. We affirm.

We will first discuss Domino's appeal, then Page's cross-appeal.

## I. BACKGROUND

This case arose out of an accident which occurred on March 7, 1989, at approximately 1:30 a.m., on the premises of Domino's Waipahu store. At the time of the accident, Page was employed by Domino as a manager-in-training at its Waipahu store but was off duty. Earlier that same evening, Page borrowed the car of Chris Bloemendaal (Bloemendaal), the manager at Domino's Waipahu store. Page went back to Domino's Waipahu store at around 1:00 a.m. to return Bloemendaal's car. Page went into the office and sat on the stool next to Bloemendaal for ten minutes, then moved the stool to another location and sat on it for another fifteen

---

1. Our review of the pertinent parts of the trial transcript does not indicate an objection by Domino at trial, but we conclude that the trial court's ruling on Domino's motion in limine, *see* n. 4 *infra,* amounted to an "unequivocal holding" concerning the issue raised, thereby removing the need for Domino to renew its objection during trial. *See Craft v. Peebles,* 78 Hawai'i 287, 294–95, 893 P.2d 138, 145–46 (1995); *Lussier v. Mau-Yan Dev., Inc.,* 4 Haw.App. 359, 393, 667 P.2d 804, 826 (1983).

minutes. At about 1:30 a.m., the stool collapsed.

On October 3, 1989, Page filed a complaint against Domino for negligence. Page alleged that on March 7, 1989, while in the manager's office of Domino's Waipahu Store, he sat on a stool which collapsed, causing injuries.

On August 7, 1992, Domino's filed a motion in limine to exclude evidence of prior accidents involving other stools used at Domino's Waipahu store. The motion sought to exclude portions of "testimony [from] [Page], [Bloemendaal], and other witnesses regarding evidence seeking to establish a certain stool as being unreasonably dangerous or notice that this stool was unreasonably dangerous." On August 10, 1992, in a hearing prior to the jury trial, the court denied Domino's motion.

On August 24, 1992, the jury returned a special verdict containing, *inter alia*, findings that Domino was negligent and awarding Page special damages of $645,000 and general damages of $195,000. A judgment consistent with the jury's verdict was filed on September 9, 1992.

Domino timely appealed arguing that the trial court erred in denying its motion in limine to exclude evidence regarding prior incidents involving two other stools and in denying its motion for a new trial based on the court's improper admission of the same evidence.

Page timely cross-appealed arguing that the trial court erred in denying his motion for prejudgment interest.

## II. PRIOR INCIDENTS

■ The trial court's decision to admit evidence of two prior incidents is subject to the "abuse of discretion" standard of review. *Warshaw v. Rockresorts, Inc.*, 57 Haw. 645, 652, 562 P.2d 428, 434 (1977) (admission of evidence of prior similar accidents is within the discretion of the trial court).

Domino contends that the trial court should have excluded the evidence regarding prior incidents involving other stools since Page failed to satisfy the criteria established in *Warshaw*. Specifically, Domino asserts

that Page failed to show that the conditions under which the incidents involving the other stools occurred were "the same or substantially similar" to the conditions under which the accident in this case occurred. We disagree.

■ In *Warshaw, supra,* the Hawai'i Supreme Court stated that evidence of previous accidents may be admitted only if certain conditions are met:

[b]efore evidence of previous ... [accidents] may be admitted on the issue of whether or not the condition as it existed was in fact a dangerous one, it must first be shown [by the proponent of the evidence] that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.

. . . .

The strictness of this requirement of similarity of conditions is "much relaxed, however, when the purpose of the offered evidence is to show notice, since all that is required here is that the previous ... [accident] should be such as to attract the defendant's attention to the dangerous condition which resulted in the litigated accident."

*Id.* at 652, 562 P.2d at 434 (quoting *Laird v. T.W. Mather, Inc.,* 51 Cal.2d 210, 220, 331 P.2d 617, 623 (1958)).

■ Evidence of prior similar incidents " 'may be relevant circumstantially to show a defective or dangerous condition, notice thereof or causation on the occasion in question.' " *Kaeo v. Davis,* 68 Haw. 447, 455, 719 P.2d 387, 393 (1986) (quoting *Simon v. Town of Kennebunkport,* 417 A.2d 982, 984–85 (Maine 1980)). "The purpose for which the evidence is offered 'is important in determining whether the proof will be admitted and how strictly the requirement of similarity of conditions will be applied.' " *Kaeo,* at 456, 719 P.2d at 393 (quoting E. Cleary, *McCormick on Evidence* § 200, at 587 (3d ed.1984)).

■ In its memorandum in opposition to Domino's motion in limine, Page asserts that *Warshaw's* substantial similarity requirement was easily met. In the same memorandum, Page infers two purposes/reasons for

offering evidence regarding the other stools: (1) to establish the dangerous condition posed by the stool in question, and (2) to provide notice as to the dangerous condition.

At trial, evidence about the other stools came from Bloemendaal's deposition testimony.[2] Bloemendaal described the stool that collapsed when Page was on it to be approximately twenty-one inches high with "black tubes, four crisscrossing in the middle ... and it was fiberboard circle, maybe 10 inches."[3] He indicated there were three other stools similar to that one stool and he threw away two stools because they broke.

[PAGE'S ATTORNEY:] ... There were other of these chairs from time to time at the Waipahu store?

[BLOEMENDAAL:] Yes.

[PAGE'S ATTORNEY:] You recall them as being four.

[BLOEMENDAAL:] Yes.

[PAGE'S ATTORNEY:] On the evening in question there were two.

[BLOEMENDAAL:] Yes. Two left.

[PAGE'S ATTORNEY:] What happened to the other two?

[BLOEMENDAAL:] It was tossed out.

[PAGE'S ATTORNEY:] You tossed them out?

[BLOEMENDAAL:] Yes.

[PAGE'S ATTORNEY:] They broke?

[BLOEMENDAAL:] Yes.

[PAGE'S ATTORNEY:] Do you know why the other two broke?

[BLOEMENDAAL:] Well, the wood screws went into the fiberboard. It was only like maybe a quarter inch, and, you know, the stress just—fiber just went through.

. . . .

[PAGE'S ATTORNEY:] Okay. Had you ever seen one of those stools collapse before?

[BLOEMENDAAL:] Well, not collapse, but fall apart.

[PAGE'S ATTORNEY:] Had anyone ever been hurt when the other two stools collapsed?

[BLOEMENDAAL:] Well, if they did, they didn't say anything.

Bloemendaal related that when sitting on the stool and if you "lean forward ... the seat would come up with you, so it's like you didn't fall off of it yet, but you knew it was broken. And then you either took your chances by, you know, bouncing on a little piece of wood or you threw it out[.]" Bloemendaal also testified that the stools "were not constructed very well" in terms of strength and that prior to the March 7, 1989 incident with Page, he informed his supervisor, Mike Riggins, "that the stools came apart" and requested that the stools be replaced with "something else." Also, on previous occasions when he sat on the stool that collapsed when Page was on it, Bloemendaal thought that the stool might "collapse" with him on it and that he was "taking chances more or less, for sitting on [any one of] the [stools.]"

As to the Page incident, Page described the stool he sat on to have "collapsed." Prior to the stool's collapse, Page sat on the stool without leaning back, with both feet on the ground, and "when [he] fell, [his] legs went straight out." After the stool collapsed, Bloemendaal "held it up by one leg and it seemed everything else was kind of dangling." Bloemendaal described the incident as "the legs collaps[ing] underneath" Page.

Essentially, the testimony indicates that the other stools had broken seats and fell apart and the stool Page sat on collapsed. Offered to establish that the stool created a dangerous condition, the prior incidents were sufficiently similar to meet and satisfy the *Warshaw* criteria. All of the four stools, including the one on which Page was injured, were similar in structure and makeup. The record indicates that in the prior incidents, two of the stools broke or fell apart when the wood screws went through the fiberboard base of the seat. The stool that Page sat on collapsed and was apparently thrown away.

**2.** Bloemendaal was unable to attend trial so the transcript of his deposition testimony was read to the jury.

**3.** The actual stool was discarded after it fell apart, and its whereabouts is not known.

There is no evidence of what happened to the fourth stool. The prior incidents and the Page incident involved persons sitting on the stools. As such, the causation between the prior incidents and Page's accident need not be identical. The critical issue is whether the failure of the other two stools and the one on which Page sat posed a risk of injury for anyone sitting on them.

▌ We also think the proffered evidence met the "much relaxed" standard in *Warshaw* which applies when admission is sought on the ground that the prior incidents should have attracted Domino's attention to a potentially dangerous situation or condition. Under this standard, we conclude that the prior incidents were substantially similar to Page's accident and evidence thereof was properly admitted to provide notice of a dangerous situation or condition. In fact, the trial court seemed to have based its decision to allow the proffered evidence on the basis of notice to Domino's of a dangerous condition.[4] Moreover, the admission of this evidence would not have resulted in unfair surprise or prejudice to Domino since the incidents were reported by Domino's own employee—general manager Bloemendaal; would not have caused confusion of the issues for the jury could have been properly instructed that the incidents were admitted for the limited purpose of showing notice; and would not have consumed an inordinate amount of time. *Warshaw*, 57 Haw. at 653, 562 P.2d at 434; Hawai'i Rules of Evidence Rule 403. Consequently, we conclude that the court did not err in admitting the evidence regarding the other stools. It follows then, that the trial court correctly denied Domino's motion for a new trial.

## III. PREJUDGMENT INTEREST

Page, in his cross-appeal, contends that the trial court erred in denying his September 23, 1992 Motion for Prejudgment Interest (Prejudgment Interest Motion) asserting that he is entitled to receive an award of prejudgment interest pursuant to Hawai'i Revised Statutes (HRS) § 636–16 (1993).

▌ " 'Prejudgment interest, where appropriate, is awardable under HRS § 636–16 in the discretion of the court.' " *Sentinel Ins. v. First Ins. of Hawai'i*, 76 Hawai'i 277, 303, 875 P.2d 894, 920 (1994) (quoting *Schmidt v. Board of Directors of the Ass'n of Apartment Owners of The Marco Polo Apartments*, 73 Haw. 526, 533, 836 P.2d 479, 483 (1992)). Therefore, we review the trial court's denial of Page's claim for prejudgment interest for an abuse of discretion. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 137, 839 P.2d 10, 36, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992). "Generally, to constitute an abuse of discretion it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Schmidt*, 73 Haw. at 533, 836 P.2d at 483 (citations omitted).

▌ HRS § 636–16 provides: "In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date

---

4. During the hearing for Domino's motion in limine, the following exchange occurred between the trial court and Domino's counsel:

THE COURT: But same type stools; right? With the rest?

MR. KIMURA: Same type. But, Your Honor, basically this—I think the major point and another major point to be made is this. Those two stools which were previously discarded had a loose seat, and, basically, they were just had until they fell apart, and then they just threw them away.

THE COURT: So that's notice; right? The seat gets loose?

MR. KIMURA: Not really notice, Judge. Not really notice. It's because of this, an important factor, I think, is this. No one was injured, and it's because everyone there knew.

THE COURT: Just because no one's injured, you're not going to keep them out. I'm going to allow it. As the evidence develops, same type stools, you know, a loose seat and legs become wobbly as I understand the evidence to be presented, and then it gets loose and they throw it out. So—

MR. KIMURA: But in our case here, the stool, there was no such similarities in terms of the loose seat. Not only the loose seat now and the legs being wobbly.

THE COURT: Yeah, I'm going to let it in. So your first motion is denied on the plaintiff's side.

when the injury first occurred...."[5] The well-established "purpose of the statute ... [is] to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." *Amfac*, 74 Haw. at 137, 839 P.2d at 36 (internal quotation marks and citations omitted); *McKeague v. Talbert*, 3 Haw.App. 646, 658 P.2d 898 (1983). Another acknowledged purpose of HRS § 636–16 is "to discourage 'recalcitrance and unwarranted delays in cases which should be more speedily resolved.'" *Calleon v. Miyagi*, 76 Hawai'i 310, 322, 876 P.2d 1278, 1290 (1994) (quoting Conf.Comm.Rep. No. 67, in 1979 Senate Journal, at 984). *See also Wiegand v. Colbert*, 68 Haw. 472, 478, 718 P.2d 1080, 1084 (1986) (identifying the speedy resolution of cases as part of the statute's purpose).[6] A trial court's denial of prejudgment interest is usually affirmed if the party requesting the award is found to have caused the delay, *Schmidt*, 73 Haw. at 534–35, 836 P.2d at 484, or if there is no showing that the non-moving party's "conduct unduly delayed the proceedings" of the case. *Amfac*, 74 Haw. at 137, 839 P.2d at 36.

■ The trial court, during the September 30, 1992 hearing for the Prejudgment Interest Motion, explained that Page was not entitled to the award because the period of time it took to complete the case was not extraordinary considering "the totality of the case."[7]

Page argues that the trial court abused its discretion because it based its decision on a standard where "prejudgment interest may only be awarded where there is 'extraordinary delay.'" This argument is a mischaracterization of the trial court's explanation of its ruling and is without merit. The trial court referred to the period of time it took to resolve the entire case as not being "extraordinary" considering the entire litigation. Nowhere in the trial court's statement is there a determination that it did not award prejudgment interest solely because there was no "extraordinary delay" in the resolution of the case.

Additionally, Page asserts that he is entitled to prejudgment interest because Domino delayed the speedy resolution of the case by not offering more than $25,000 during the numerous settlement conferences held during the litigation. Page relied on *Wiegand*, where the Hawai'i Supreme Court rejected the challenge to the trial court's award of prejudgment interest. The plaintiff in *Wiegand*, the representative of the decedent that was struck and killed by a car while crossing a road "at or near a crosswalk[,]" offered to settle the claim for the policy limit of the insurance of $25,000. *Wiegand*, 68 Haw. at

---

5. The legislative history of Hawai'i Revised Statutes (HRS) § 636–16 states:

   Your committee understands that at the present time interest is generally awarded commencing on the day the judgment is rendered. Where the issuance of a judgment is greatly delayed for any reason, such fixed commencement date can result in substantial injustice. Allowing the trial judge to designate the commencement date will permit more equitable results. Also, it is expected that party litigants will give serious regard to this discretion on the part of the trial judge so that those who may have had an unfair leverage by the arbitrariness of the prior rule will arrive at the realization that recalcitrance or unwarranted delays in cases which should be more speedily resolved will not enhance their position or assure them of a favorable award.

   Sen.Conf.Comm.Rep. No. 67, in 1979 Senate Journal, at 984.

6. Page maintains that the "other purpose of [HRS § 636–16], as embodied in the statute's legislative history, is to achieve settlements[.]"

However, although settlement provides a quick resolution of a case, which is consistent with the statute's purpose, it does not necessarily follow from this that the legislature intended the statute to achieve settlements.

7. The trial court stated:

   THE COURT: Well, the Court is going to rule and it would appear to the Court that *the period of time is not extraordinary when you consider discovery and all of that.* It would appear to the Court the amounts offered, even though the final amount is quite a bit larger is a situation that the defendants did believe apportionment could play a part in this matter because of the discovery, and the defendant's previous accidents.

   But *based on the totality of the case,* even though the plaintiff is granted the amount of eight hundred forty thousand dollars and found as such by the jury, the Court is going to rule. I am not going to award prejudgment interest in this matter. So plaintiff's motion for prejudgment interest is denied.

   (Emphases added.)

478, 718 P.2d at 1084–85. The insurer refused to make any offer of settlement and rejected two other similar offers of settlement by the plaintiff. The court found that "[a]cceptance of any of the three offers to settle for the policy limits of $25,000 would certainly have more speedily resolved the case." *Id.* at 478, 718 P.2d at 1085. However, the situation here is distinguishable. The trial court, considering the "totality of the case," denied prejudgment interest because Domino's offer of $25,000 was not unreasonable in light of its belief regarding disputed issues on liability and apportionment of damages. We conclude the trial court did not abuse its discretion in this regard.

The accident occurred on March 7, 1989. Page filed the complaint against Domino on October 3, 1989 and discovery commenced two months later. On December 19, 1989, Bloemendaal's oral deposition was taken by Domino. On January 25, 1991, an Order Setting Trial Date to July 22, 1991 was filed. Discovery ended prior to the scheduled trial date. However, on September 10, 1991, the trial court filed an Order Resetting Trial Date to the week of December 2, 1991.[8] On September 17, 1991, Domino filed a Motion for Judgment on the Pleadings or Alternatively, Motion for Summary Judgment. On September 26, 1991, Page filed a motion for a protective order. Both motions were denied. The order denying Domino's motion was entered on November 7, 1991, while the one denying Page's motion was filed on November 15, 1991. Settlement conference notices for June 19, 1991, November 1, 1991, and July 2, 1992 were filed. On January 28, 1992, a third Order Resetting Trial Date to the week of August 10, 1992 was entered. Trial began on August 10, 1992 and ended with a jury verdict in favor of Page two weeks later. Judgment was entered on September 9, 1992 against Domino and in favor of Page for $645,000 in special damages and $195,000 in general damages. This award was entered over three-and-a-half years after Page was injured.

There is no evidence in the records to indicate that any delays in the proceedings were due to the conduct of either Page or Domino. The continuances of the trial date were not due to the conduct of either. Based on our review of the record, we hold that the trial court did not exceed the bounds of reason or disregard rules or principles of law or practice to the detriment of Page in denying his request for prejudgment interest.

## IV. CONCLUSION

For the reasons stated above, we affirm (1) the September 9, 1992 Judgment, (2) the October 20, 1992 Order Denying Defendant Domino's Motion for New Trial, and (3) the October 20, 1992 Order Denying Page's Motion for Prejudgment Interest.

---

**8.** On May 21, 1991, Domino filed a motion to continue the trial date because it was not able to complete discovery by the cutoff date. Domino withdrew this motion on June 10, 1991.