EDITH KAEO, Guardian of the Property of Lurline Kido, Plaintiff-Appellee, Cross-Appellant, *v.* ALFRED K. DAVIS; PATRICE DAVIS; ALFRED DAVIS and HAWAIIAN ELECTRIC CO., INC., Defendants-Appellees, Cross-Appellees, and CITY AND COUNTY OF HONOLULU, Defendant-Appellant, Cross-Appellee, and FORD MOTOR COMPANY; HONG'S LTD., dba ANNA'S LOUNGE; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 4-10; DOE "Non-Profit" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 2-10, Defendants

NO. 10318

(CIV NO 63959)

MAY 14, 1986

LUM, C J., NAKAMURA, PADGETT, HAYASHI
AND WAKATSUKI, JJ

448

OPINION OF THE COURT BY NAKAMURA, J.

The Circuit Court of the First Circuit adjudged the City and County of Honolulu and Alfred K. Davis jointly and severally liable for the damages sustained bv Lurline Kido in a single-car accident. The City appeals, averring the trial court erred in not permitting evidence of beer-drinking before the mishap by Davis, the driver, to be heard by the jury and in rejecting an instruction that would have apprised the jury of the possible legal consequence of its verdict on the negligence attributable to each putative joint tortfeasor. Exercising an abundance of caution the plaintiff cross-appeals, claiming error on the part of the trial court in excluding evidence of allegedly similar prior accidents. We agree with the City that the circuit court committed reversible error in excluding the evidence of drinking and with the plaintiff that the offered evidence of prior accidents should have been admitted. We also think a trial jury should be informed of the legal effect of its special verdict where the plaintiff's injury resulted from the negligence of more than one defendant.

I.

Lurline Kido was seriously injured on January 12, 1979 when an automobile driven by Alfred K. Davis in which she and Samuel Taupo were passengers ran into a roadside utility pole. The accident happened at dusk while Miss Kido and her companions were on their way home from Anna's Lounge where they had spent part of the afternoon. Though the evidence developed in the course of pre-trial discovery was

far from precise, it established that Davis had consumed several "beers" that afternoon. And in her deposition, Miss Kido described Davis as "feeling good" when they left the drinking establishment for Palolo Valley where they lived.

When Davis reached Palolo Valley, he drove first on Palolo Avenue and then on 10th Avenue. The accident occurred on a double-curved section of 10th Avenue near its mauka end. The sharp bends in the road there are marked by several road signs, including one indicating the presence of a curve and another advising a driving speed of 15 miles per hour even though the legal limit is 25 miles. Davis drove through the first curve without mishap. But he failed to negotiate the second safely, and the car slammed into a utility pole despite his efforts to brake it.

Taupo, the sole occupant of the ill-fated vehicle giving testimony of the accident at trial, estimated the car was travelling at a speed of 20 to 30 miles an hour prior to the crash. Davis, when questioned by a police officer on the night of the mishap, admitted he was travelling at 30 miles an hour before he applied the brakes. When the car hit the utility pole, Miss Kido was thrown against the windshield, suffering extensive head injuries that have disabled her.

The guardian of Miss Kido's property brought suit on her behalf against a host of identified and unidentified defendants; the defendants named in the pleading were the driver and his parents, the owners of the vehicle. The defendants who were subsequently identified were the manufacturer of the car, the owner of the pole that was struck, the owner of the drinking establishment where Miss Kido, Davis, and Taupo whiled away the afternoon before the untoward event, and the governmental body responsible for maintaining the road on which it happened.

But by the time the case proceeded to trial the number of defendants had been reduced by settlement or attrition. Among those remaining were Davis, whose whereabouts since the crash were a mystery, and the City. Davis, who had been served with notice of the suit by publication, was absent but represented by counsel. Counsel convinced the trial judge that the prejudicial effect of evidence of Davis' consumption of alcoholic beverages outweighed its probative value, and the jury heard nothing about the activities of the driver and his passengers during the afternoon of January 12, 1979. Thus, at trial the focus of the case was the alleged knowledge on the City's part that the winding road was unsafe and a failure to render it safe.

At the close of evidence the case was submitted to the jury on

 

interrogatories propounded by the trial judge. The special verdict returned by the jury found the negligence of Davis and the City caused the accident, 99% of the negligence was attributable to Davis and 1% to the City, and the plaintiff suffered damages amounting to $725,000. A judgment holding Davis and the City jointly and severally liable for the damages, reduced by sums of $99,316 and $5,000 previously paid in settlement by Hawaiian Electric Company and Ford Motor Company, was entered.

## II.

We begin our consideration of the appeal from the judgment and the cross-appeal by addressing the City's claim that the trial court committed reversible error in excluding from trial "testimony, whether live or by deposition, and all other evidence from any other source which would indicate that Defendant Alfred K. Davis had consumed alcohol prior to the accident in question."

## A.

Whether Alfred K. Davis operated the errant vehicle while under the influence of intoxicating liquor or not undoubtedly was "an important circumstance bearing on the issue of his negligence." *Soriano v. Medina*, 648 S.W.2d 426, 428 (Tex. Civ. App.—San Antonio 1983) (citation omitted). "Our laws give a [party] the right to introduce evidence of those relevant and material facts which logically tend to prove the issues involved and which is not otherwise excluded." *State v. Smith*, 59 Haw. 565, 567-68, 583 P.2d 347, 349-50 (1978); *see* Hawaii Rules of Evidence (Haw R. Evid.) 401 and 402.[1] "The test of admissibility is not one of absolute proof of an ultimate fact in controversy." *Bonacon v. Wax*, 37

---

[1]Haw. R. Evid. 401 reads

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

and Haw R. Evid. 402 reads:

All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

Haw. 57, 61, *reh'g denied,* 37 Haw. 106 (1945); *see also State v. Irebaria,* 55 Haw. 353, 356, 519 P.2d 1246, 1248 (1974). For relevancy is not "dependent upon the conclusiveness of the testimony offered, but upon its legitimate tendency to establish a controverted fact." *Bonacon v. Wax,* 37 Haw. at 61.

Here, the trial court ruled out all evidence of drinking by Davis, whatever its source, on grounds that "you need other evidence besides a mere consumption of alcohol to bring it into evidence" and "in today's society, any indication of drinking . . . and driving can raise undue prejudice against [the driver]."[2] We think the evidence of drinking and Davis' other conduct had a tendency to establish his negligence as the proximate cause of the harm that befell the plaintiff.

"Had the manner in which the [Davis] car was driven been wholly beyond criticism, the fact of [Davis'] intoxication would have been wholly irrelevant," *McKenna v. Volkswagenwerk Aktiengesellschaft,* 57 Haw. 460, 467, 558 P.2d 1018, 1023 (1977), and the trial court's ruling would be beyond reproach. But such was not the case; as the court noted in its oral ruling, there was evidence of speeding and of the driver taking his eyes off the road while attempting to round a curve. *See supra* note

---

[2]The court's oral ruling on this question was:

I don't believe that the alleged speeding as described by Mr. Nakamoto in an area where the speed limit could be reasonably said to be 25 miles an hour is evidence of intoxication or being under the influence. I don't believe that reaching for cigarettes whether it be on the back seat or on the dash itself is evidence of intoxication or being under the influence.

I don't believe that another person saying that we were feeling good and not the driver, defendant saying that that feeling can be imputed to the driver and thus being under the influence or intoxicated at that time, the Court finds as a matter of law that the evidence which the City feels corroborates intoxication or being under the influence with four beers in three and a half hours before the accident does not meet the requirement to indicate that you need other evidence besides a mere consumption of alcohol to bring it into evidence.

I feel that in today's society, any indication of drinking, no matter what the amount, and driving can raise undue prejudice against that person who has been said to be quote drinking and driving end quote. And so at least in this case I will not permit evidence to come in on the consumption of alcohol, and Anna's Lounge is dismissed from this lawsuit. There will be no reference to Anna's Lounge because of the inference that may be drawn that there was drinking without explanation.

2.[3] And there was more[4] from which a jury could infer "four beers," though insufficient to cause Davis to be intoxicated in a strict penal sense, were "sufficient to impair his capacity to perceive the dangers with the clarity, make the decisions with the prudence, and operate the vehicle with the skill and caution required by law." *Simon v. Commonwealth*, 220 Va. 412, 419-20, 258 S.E.2d 567, 572-73 (1979).[5] Unquestionably, the evidence of drinking was relevant and material.

## B.

The evidence, however, was also deemed inadmissible on the ground

---

[3]Samuel Taupo was called as a witness by the plaintiff. The relevant portion of his testimony on direct examination reads as follows:

Q. And at the time just prior to the accident or let's put it this way. At the time that you went around this parked car, what do you estimate the speed was?

A. As we made the turn, we were probably going around 30. As we avoided the parked car, we was going around 30. As the car was coming towards us, we accelerate to maybe about 35 as to making that turn and to get back to our lane at that time to avoid the other car coming towards us.

Q. And at the point, if you can recall, at the point just before the collision itself with this telephone pole, do you have any idea what the speed might have been?

A. No.

Q. In regards to the actions, if any, that might have taken place inside of the car by Mr. Davis, besides just his driving, would you describe what, if anything, he was doing in the car just before the accident.

A. I just lit a cigarette. and I threw the cigarettes on the dashboard; and he asked for one and he got one from the dashboard. And he reached over to the dashboard for the cigarette

In the account of the accident given to the police officer who questioned him on the night of the accident Davis said

he turned and reached for his jacket laying on the rear passenger compartment to get his cigarettes. And when he turned to do that and when he turned back to look at the road, he saw the utility pole and he had to apply his brakes

[4]For example, in a pre-trial deposition Miss Kido described Davis as "feeling good" when they left Anna's Lounge. The term is a colloquialism describing the mild euphoria that often accompanies the consumption of alcohol

[5]The trial judge's ruling was influenced, we believe. by an offer of proof that Davis showed no outward sign of intoxication at the accident scene But alcohol "also impairs judgment and discrimination. In short, alcohol adversely affects the ability to perform accurately and reason clearly." S. Brent and S Stiller, *Handling Drunk Driving Cases* § 4.2, at 51 (1985). Furthermore studies have indicated that relatively low doses of alcohol may affect driving performance *See id.* § 4.5; Flanagan, Stride, Rigby, and Lockridge, *The Effects of Low Doses of Alcohol on Driving Performance.* 23 Med. Sci. Law 203, 206-08 (1983)

that "in today's society, any indication of drinking, no matter what the amount, and driving can raise undue prejudice against that person who has been said to be 'drinking and driving.'" *See supra* note 2. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ." Haw. R. Evid. 403.[6] Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note to Federal Rules of Evidence (Fed. R. Evid.) 403. "The responsibility for maintaining the delicate balance between probative value and prejudicial effect," we have said, "lies largely within the discretion of the trial court." *State v. Iaukea,* 56 Haw. 343, 349, 537 P.2d 724, 729 (1975) (citation omitted). "Nevertheless, discretion can be abused," E. Cleary, *McCormick on Evidence* § 185, at 547 (3d ed. 1984), and in this instance we think it was.

Relevant evidence, as noted above, is not excludable under Haw. R. Evid. 403 unless its probative value is substantially outweighed by the danger of unfair prejudice. "Analyzing and weighing the pertinent costs and benefits is no trivial task . . . Even the same item of evidence may fare differently from one case to the next, depending on the relationship to the other evidence in the cases and the importance of the issues on which it bears." *Id.* at 546 (footnote omitted). A ruling of inadmissibility premised merely upon an impression that "any indication of drinking" by a party is fraught with "the danger of unfair prejudice" cannot be one that "satisf[ies] the cost-benefit calculus" demanded by Haw. R. Evid. 403. *Id.* at 548.

Granted, the evidence of drinking was prejudicial. Still, evidence with a capacity for unfair prejudice cannot be equated with testimony simply adverse to the opposing party; for evidence is only material if it is prejudicial in some relevant respect. 1 J. Weinstein and M. Berger, *Evidence* ¶ 403[03] (1985) (citation omitted). We are not willing to assume "any indication of drinking" is so unfair to the drinking driver that the opposing party must be denied his right to have relevant and

---

[6]Haw. R. Evid. 403 reads:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

 

material evidence considered by the trier of fact. Nor are we willing to concede that trial juries, with guidance from the trial court, are incapable of rendering objective fact determinations in trials of negligence actions in which drinking is involved.

The judge's ruling of inadmissibility, it appears, was influenced by representations that in pre-trial depositions Miss Kido and Samuel Taupo testified Davis was sober prior to the accident and the investigating officer detected none of the tell-tale signs of drunkenness when he questioned Davis at the accident scene. These, however, were matters that could have been offered instead for assessment by the trier of fact along with the evidence of drinking by the driver. The trial judge's decision not to permit the jury to hear such evidence was an abuse of discretion amounting to error, and we cannot say it had no effect upon the outcome of the trial. Since our conclusion compels a retrial of the action, we proceed to the issue raised by the plaintiff in her cross-appeal.

### III.

The issue is whether evidence of other accidents is admissible in the trial of a negligence action, one we have encountered before. *See American Broadcasting Cos. v. Kenai Air of Hawaii, Inc.,* 67 Haw. 219, 686 P.2d 1 (1984); *Warshaw v. Rockresorts, Inc.,* 57 Haw. 645, 562 P.2d 428 (1977). The plaintiff urges the trial judge's exclusion of accident reports containing evidence of several prior accidents occurring near the site of the mishap in which she suffered injuries was error, and we agree.

### A.

Evidence of other accidents may be "highly probative on material issues of a negligence action." *Simon v. Town of Kennebunkport,* 417 A.2d 982, 985 (Maine 1980). "[E]vidence of other similar accidents or occurrences may be relevant circumstantially to show a defective or dangerous condition, notice thereof or causation on the occasion in question." *Id.* at 984-85. But "the introduction of other-accident evidence may carry with it the problems associated with inquiry into collateral matters . . . ." *Id.* at 985. To minimize these problems we have cautioned our trial courts that:

> [b]efore evidence of previous . . . [accidents] may be admitted on the issue of whether or not the condition as it existed was in fact a

dangerous one, it must first be shown [by the proponent of the evidence] that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.

*Warshaw v. Rockresorts, Inc.*, 57 Haw. at 652, 562 P.2d at 434 (quoting *Laird v. T. W. Mather, Inc.*, 51 Cal. 2d 210, 220, 331 P.2d 617, 623 (1958) (modifications in original)). But we recognize that "when the purpose of the offered evidence is to show notice," the required similarity in circumstances is considerably less than that demanded when the object is to show a defective or dangerous condition or causation, "since all that is required here is that the previous . . . [accident] should be such as to attract the defendant's attention to the dangerous situation which resulted in the litigated accident." *Id.*

Yet "even when sufficient similarity is shown, the admission of evidence of prior similar accidents is [still] within the discretion of a trial court." *Id.* (citations omitted). The evidence, of course, "may be excluded if the danger of unfair surprise, prejudice, confusion of the issues or the consideration of undue consumption of time is disproportionate to [its] value." *Id.* at 652, 562 P.2d at 434 (citations omitted); *see* Haw. R. Evid. 403.

B.

The plaintiff offered the evidence of prior accidents, consisting of four accident reports, to show the existence of a dangerous condition, the City's knowledge of the condition, and as a foundation for testimony by her expert witness.[7] The purpose for which the evidence is offered "is important in determining whether the proof will be admitted and how strictly the requirement of similarity of conditions will be applied." E. Cleary, *supra,* § 200, at 587 (footnotes omitted). The evidence may be

---

[7]Haw. R. Evid. 703 reads as follows:

Bases of opinion testimony by experts. *The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.*

 

inadmissible for one purpose yet admissible for another; as we have seen, "[t]he strictness of [the] requirement of similarity of conditions is 'much relaxed, however, when the purpose of the offered evidence is to show notice . . . .'" *Warshaw v. Rockresorts, Inc.*, 57 Haw. at 652, 562 P.2d at 434 (quoting *Laird v. T. W. Mather, Inc.*, 51 Cal. 2d 210, 220, 331 P.2d 617, 623 (1958)). From an examination of what was proffered, we are not convinced that it met the test of admissibility to establish the existence of a dangerous condition or causation.

A perusal of the police reports of four prior accidents offered as evidence reveals the accidents happened over a span of six years and at spots in the double-curved section of the road in the proximity of but not at the very site of the accident in question. The record also indicates there were subsequent modifications of roadway signs and markers along that section of the road. Since it was incumbent upon the proponent of the evidence to show "that the conditions [of] the alleged previous accidents were the same or substantially similar to the one in question," *Warshaw v. Rockresorts, Inc.*, 57 Haw. at 652, 562 P.2d at 434, we cannot say it was error for the trial judge not to admit the evidence for purposes of proving the existence of a dangerous condition or causation.

But we think the proffered evidence met the "much relaxed" standard applicable when admission is sought on the ground that the prior accidents should have attracted the City's attention to a potentially dangerous condition. Moreover, the introduction of this evidence would not have resulted in unfair surprise or prejudice to the City since the reports were prepared by officers of the Honolulu Police Department. Nor can we say its admission would have caused confusion of the issues, for the jury could have been properly instructed that the reports were admitted for the limited purpose of showing notice. *See* Haw. R. Evid. 105;[8] *Low v. Honolulu Rapid Transit Co.*, 50 Haw. 582, 585-86, 445 P.2d 372, 376 (1968). And we see no reason why the introduction of the evidence would have consumed an inordinate amount of time.

---

[8]Haw. R. Evid. 105 reads:

Limited admissibility. When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

### IV.

Having concluded that the trial judge erred in rejecting evidence offered by both the City and the plaintiff, we finally consider his refusal of a jury instruction proposed by the City on a possible legal consequence of a verdict leading to a judgment holding the City and Alfred K. Davis jointly and severally liable for damages sustained by the plaintiff.[9]

### A.

Citing *McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983), the City asserts "the trial judge committed reversible error [when] he did not 'inform the jury as to the law of the case applicable to the facts in such manner that [it would] not be misled.'" Of course, there is no reason to question the general propositions reiterated in *McKeague.* Jury instructions undoubtedly are meant "to furnish guidance to [jurors] in their deliberations," and the instructions given to a jury should "explain the law of the case, . . . point out the essentials to be proved on one side or the other, and bring into view the relation of the particular evidence adduced to the particular issues involved." *Id.* at 657, 658 P.2d at 906 (citation omitted). But *McKeague* did not treat the issue at hand, and we must look elsewhere for guidance in deciding whether or not the command that "the court shall give to the jury such explanation and instruction concerning the matter . . submitted as may be necessary to enable the jury to make its findings upon each issue" was followed here. Hawaii Rules of Civil Procedure (HRCP) 49(a).[10]

---

[9] The City's Instruction No. 18 stated·

You are instructed that if you find Defendant Davis liable for any degree of liability and find the City liable for *any* degree of liability. under Hawaii law. the City is compelled to pay Defendant Davis' share of the entire judgment if he is unable to pay. less whatever degree or percentage of liability you assess against the Plaintiff or any of the other Defendants.

[10] HRCP 49(a) reads.

Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. *The court shall give to the jury such explanation and instruction concerning the matter thus*

Under the special verdict procedure contemplated by HRCP 49(a) "the jury makes findings of fact and the court applies the law." C. Wright and A. Miller, *Federal Practice and Procedure* § 2503 (1971). But there has been no definitive answer to the problem of whether juries should be informed of the legal effects of their findings of fact, and the debates among courts[11] and among commentators[12] continue. Courts concluding it is error to inform jurors of the consequences of their findings have "reasoned that the sole purpose of the special verdict procedure is to insure objective jury findings, and that it would be inconsistent with this purpose for the jurors to know what the effect of their answers would be." C. Wright & A. Miller, *supra,* § 2509, at 511-12; *see also McGowan v. Story,* 70 Wis. 2d 189, 197, 234 N.W.2d 325, 329 (1975). Other courts, like the Supreme Court of Idaho, have chosen not to set juries "loose in a maze of factual questions, to be answered without intelligent awareness of the consequences." *Seppi v. Betty,* 99 Idaho 186, 192, 579 P.2d 683, 689 (1978) (quoting *Porche v. Gulf Mississippi Marine Corp.,* 390 F. Supp. 624, 632 (E.D. La. 1975)). Much of the judicial discussion has taken place in contexts where the comparative negligence of plaintiffs and defendants has been the issue. The discussion, however, is pertinent in our consideration of a closely related problem, whether the jury should be informed of a possible legal consequence of its verdict apportioning negligence among joint tortfeasors.

---

*submitted as may be necessary to enable the jury to make its findings upon each issue.* If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict. (Underscoring added).

[11] *See, e.g., Adkins v. Whitten,* 297 S.E.2d 881, 882-84 (W. Va. 1982); *Peair v. Home Ass'n of Enola Legion No. 751,* 287 Pa. Super. 400, 410-14, 430 A.2d 665, 670-72 (1981) (Both cases cite and discuss numerous other decisions).

[12] *See, e.g.,* Rogers & Shaw, *A Comparative Negligence Checklist to Avoid Future Unnecessary Litigation,* 72 Ky. L.J. 25, 83-86 (1983-84); Comment, *Informing the Jury of the Legal Effect of Special Verdict Answers in Comparative Negligence Actions,* 1981 Duke L.J. 824; Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338 (1968); Wright, *The Use of Special Verdicts in Federal Court,* 38 F.R.D. 199 (1965); Smith, *Comparative Negligence Problems With the Special Verdict: Informing the Jury of the Legal Effects of Their Answers,* 10 Land and Water L. Rev. 199 (1975).

## B.

Wisconsin, an acknowledged pioneer in the area of comparative negligence, was also an early jurisdiction adopting a rule against "inform[ing] the jury expressly or by necessary implication of the effect of [a special verdict answer] upon the ultimate right of either party litigant to recover or upon the ultimate liability of either party litigant." *Banderob v. Wisconsin Central Ry.*, 133 Wis. 249, 287, 113 N.W. 738, 751 (1907). The Supreme Court of Wisconsin in 1975 rationalized its continued adherence to the rule in these terms:

> Under our system of jurisprudence, the jury is the finder of fact and it has no function in determining how the law should be applied to the facts found. It is not the function of a jury in a case between private parties on the determination of comparative negligence to be influenced by sympathy for either party, nor should it attempt to manipulate the apportionment of negligence to achieve a result that may seem socially desirable to a single juror or to a group of jurors.

*McGowan v. Story*, 70 Wis. 2d at 197, 234 N.W.2d at 329. Few would dare take issue with these sentiments.

Yet other courts have eschewed Wisconsin's "blindfold" rule, concluding "that, ordinarily, a jury informed of the legal effect of its findings as to percentages of negligence in a comparative negligence trial is better able to fulfill its fact finding function." *Roman v. Mitchell*, 82 N.J. 336, 346, 413 A.2d 322, 327 (1980). And, "a growing trend is for courts and legislatures to require that the jury be informed of the results of apportioning negligence under a special verdict." Rogers & Shaw. *supra* note 12, at 85 (footnote omitted); *see* Hawaii Revised Statutes (HRS) § 663-31(d).[13]

These courts do not deny " '[t]he [whole] thought behind the special verdict [was] to free the jury from [anything] which would inject the feeling of partisanship in their minds, and limit the deliberations to the specific questions submitted.' " *Seppi v. Betty*, 99 Idaho at 191, 579 P.2d

---

[13]HRS § 663-31(d) reads:
> The court shall instruct the jury regarding the law of comparative negligence where appropriate.

But the situation to which the foregoing provision applies is one where the plaintiff may be contributorily negligent. *See* HRS § 663-31(a)

at 688-89 (quoting *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 518, 93 N.W.2d 552, 563 (1958)); *see also* G. Nordbye, *Use of Special Verdicts Under Rules of Civil Procedure*, 2 F.R.D. 138, 139 (1941). Yet some courts and commentators are skeptical that "special verdicts really [have done] much to eliminate the effects of bias, sympathy and prejudice from jury deliberations and jury verdicts." *Id.* at 192, 579 P.2d at 689. Experience has taught them that "jurors are concerned about the effect of their verdicts on the ultimate outcome of the case and the use of a special verdict or special interrogatories does not magically eliminate that well known trait of American juries." *Id.* Furthermore, the Supreme Court of Idaho for one is convinced "the tendency of juries to adjust their verdicts to accord with their notions of the justice of the cause is an inherent characteristic of juries and will be with us as long as [there are juries;]" *id.*, and so are we.

We are convinced too that "in most cases the jury will in fact know which party is favored by a particular answer." C. Wright and A. Miller, *supra*, § 2509, at 512. A juror in all likelihood would deduce from what happens at trial "that it will be in the plaintiff's interest for him to answer 'No' to the question [on] contributory negligence[,]" *id.* at 512-13, or that it may be in the plaintiff's interest to answer "yes" to the question on the negligence of a putative joint tortfeasor. "Thus an attempt to keep the jury in the dark as to the [legal] effect of its answers is likely to be unavailing . . . ." *Id.* at 513.

Given these probabilities, we cannot discount "the danger that [jurors] will guess wrong about the law, and may shape [their] answers to the special verdicts, contrary to [their] actual beliefs, in a mistaken attempt to ensure the result [they] deem[] desirable." *Id.* Nor can we dismiss the possibility that some jurors with incomplete knowledge of the law will exert undue influence in the deliberations. In either event, it would be "'better for courts to be the vehicle by which the operation of the law is explained.'" H. Woods, *Comparative Fault* § 18:2, at 367 (1978) (quoting *Simpson v. Anderson*, 33 Colo. App. 134, 517 P.2d 416 (1973))

We believe the trial court, if requested and when appropriate, should inform the jury of the possible legal consequence of a verdict apportioning negligence among joint tortfeasors. An explanation of the operation of the doctrine of joint and several liability in that situation would be consistent with our directive in HRCP 49(a) that "[t]he court shall give to the jury such explanation and instruction concerning the matter . . .

submitted as may be necessary to enable the jury to make its findings upon each issue."[14]

The judgment is vacated, and the case is remanded for a new trial.

*Collin Lau* (*Francis M. Nakamoto* on the briefs), Deputies Corporation Counsel, for Defendant-Appellant, Cross-Appellee City and County of Honolulu.

*Albert E. Peacock, III* (*Richard C. Sutton, Jr.,* with him on the brief; *Rush, Moore, Craven, Kim & Stricklin,* of counsel) for Defendant-Appellee Alfred K. Davis.

*Craig Kugisaki* (*Elton K. Suzuki* with him on the briefs; *Oliver, Lee, Cuskaden & Ogawa,* of counsel) for Plaintiff-Appellee, Cross-Appellant Edith Kaeo.

---

[14]Since the case will be retried, we do not find it necessary to pass on the form of the instruction. We leave it to the trial judge and the parties to draft an instruction appropriate in the circumstances.