LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29133

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
LORNE A. PALISBO, Defendant-Appellant

JEAN R. KIKUMOTO
CLERK, APPELLATE COURTS
STATE OF HAWAI'I
2010 APR 20 AM 7:50
FILED

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 07-1-0987)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Lorne A. Palisbo (Palisbo) appeals from the Judgment of Conviction and Sentence (judgment), entered on April 7, 2008, in the Circuit Court of the First Circuit[1] (circuit court). After a jury trial, Palisbo was convicted of (1) Unauthorized Possession of Confidential Personal Information, (2) Forgery in the Second Degree, (3) Credit Card Theft, and (4) Identity Theft in the Third Degree.

On appeal, Palisbo asserts that the circuit court reversibly erred by admitting "irrelevant and prejudicial evidence," "failing to give a timely and adequate limiting instruction" on the prejudicial evidence, and by "failing to excuse two jurors for cause." As explained below, we affirm the circuit court's judgment.

### I. BACKGROUND

**A.    The Incident**

On May 18, 2007 Palisbo and an unidentified female companion entered the Codi Club, a Waikiki clothing accessories store, and attempted to purchase $175.85 worth of merchandise. When asked for payment, Palisbo took a credit card from his back pocket and gave it to the companion who handed it to the store clerk. The clerk noted that the credit card was issued to Renee Nakama (Nakama), so she asked Palisbo and his companion for identification to determine the credit card's owner. Neither

_____

[1]    The Honorable Richard W. Pollack presided.

Palisbo, nor his companion responded to the request. After the clerk's third request, Palisbo and his companion simultaneously stated "that's mine." The companion explained that her identification was "in the car," while Palisbo said that the credit card belonged to his ex-wife, whom he could call at anytime. When asked, Palisbo was unable to recite his ex-wife's last name.

The clerk and her supervisor processed the transaction to see if the signature on the credit card and the signature on the receipt would match. After the credit card was accepted electronically and a receipt printed, Palisbo signed the receipt on the signature line above Nakama's name.

Palisbo's signature did not match the signature on the back of the credit card. The clerk voided the sale and told Palisbo that she could not return the credit card to him. Palisbo responded that he "wanted his card back." The clerk explained that, unless Palisbo produced identification which confirmed that the credit card was his, she could not give the credit card back to him. The clerk asked Palisbo to leave the store and called the police.

**B. Detention, Investigation and Arrest**

Honolulu Police Officer Brian McDowell (Officer McDowell) responded to the call and spoke with the clerk, who identified Palisbo as the person who attempted to use Nakama's credit card. Officer McDowell approached and detained Palisbo, then contacted Nakama by phone and requested that she meet with him at the Codi Club store.

Nakama identified the credit card as hers, and explained that her car had been broken into earlier in the day and that the card had been taken from her car at that time.[2] Nakama said that she had never met Palisbo, nor given him permission to use her credit card. Officer McDowell then arrested Palisbo for Unauthorized Possession of Confidential

---

[2]    Earlier that day, Nakama had filed an Unauthorized Entry into a Motor Vehicle (UEMV) report with the Honolulu Police Department (HPD), contending that her car had been broken into and that some personal items had been taken.

Personnel Information (for having Nakama's credit card on his person), Fraudulent Use of a Credit Card, and Forgery in the Second Degree (for signing the credit card receipt).

On May 24, 2007 Palisbo was charged by Complaint with Unauthorized Possession of Confidential Personal Information, in violation of Hawaii Revised Statutes (HRS) § 708-839.55 (Supp. 2009) (Count I); Forgery in the Second Degree, in violation of HRS § 708-852 (Supp. 2009) (Count II); Credit Card Theft, in violation of HRS § 708-8102(1) (1993) (Count III); and Identity Theft in the Third Degree, in violation of HRS § 708-839.8 (Supp. 2009) (Count IV).

## C. Pre-trial Motion

On October 16, 2007 Palisbo's attorney filed a motion *in limine* requesting, *inter alia*, "an Order excluding and precluding from use at trial evidence relating to any and all facts or circumstances regarding the uncharged UEMV complaint made by Complainant Renee Nakama[.]" The State argued that the break-in evidence was relevant "to show a lack of consent or absence of mistake by the complaining witness . . . with respect to the whereabouts of her [credit card]." In addition, the State did "not intend to go into the specific facts or circumstances of Ms. Nakama's car break-in[.]"

When asked by the court for suggestions, the following colloquy took place:

> [Palisbo's attorney]: Your Honor, we would be willing to at least stipulate that . . . the card was taken.
>
> THE COURT: From where?
>
> [Palisbo's attorney]: See, at this point my biggest concern is that we would have to mount a defense or present an alibi or something to the effect to prove that my client was --
>
> THE COURT: Taken without consent would open up the door that the jury might speculate that somebody actually broke into her house. It would seem to the Court that if the evidence is limited to the fact that the complainant just says that the purse was taken from her car without her consent, that should satisfy both counsel.
>
> [Palisbo's attorney]: Okay.
>
> THE COURT: And if you wish to have a limiting instruction or something of that nature, the Court can give that as well. But it seems to the Court that that would not be undue focus. [The Prosecutor] has said he's not calling the particular investigator

involved. So I think that the way the government is trying to present it is in the most neutral way that it can be.

[Prosecutor]: Your Honor, just for clarification then, the State can elicit from Renee Nakama that her car was broken into on May 18th; her purse was taken from her car; items that were in her purse, such as her credit card, were taken from her purse? That's about as far as the State could go with respect to the incident.

[Palisbo's attorney]: I would still have my objections, although that is a reasonable offer in terms of -- I understand the State's position that they have to have something in terms of presenting when she lost her card.

THE COURT: Not only when she --

[Palisbo's attorney]: Or when it was taken.

THE COURT: No. Both when she lost it, correct, and that it was taken from her possession without her consent.

[Palisbo's attorney]: And that would be fine. . . .
[U]ltimately I guess that would be acceptable.

. . . .

[Palisbo's attorney]: Your Honor . . . can I reserve the right to ask for a limiting instruction? I need to think about that a little bit.

## D.    Jury Voir Dire

During the voir dire of potential jury members, Palisbo's attorney questioned a prospective juror (Juror #1) regarding the State's burden of proof:

[Palisbo's attorney]: [D]o you think it's fair that the government has one hundred percent of the burden of proof here?

[Juror #1]: With all the statements that they have.

[Palisbo's attorney]: You think it's fair that my client doesn't have to prove that he's innocent?

[Juror #1]: No.

[Palisbo's attorney]: You don't think that's fair?

[Juror #1]: He can prove himself.

[Palisbo's attorney]: Do you think it's fair that he doesn't have to?

[Juror #1]: No.

[Palisbo's attorney]: I want to go into that. Why don't you think it's fair that he doesn't have to? The only reason I ask, the judge will instruct you that the State has one hundred percent of the burden of proof, meaning like I said, we could sit back there and not do anything, not put on a case and that can't be held against my client. So do you think it's fair that that's the situation?

[Juror #1]: Well, he can also protect himself. He can present his side.

[Palisbo's attorney]: Do you understand that he doesn't have to and you can't hold that against him?

[Juror #1]: Yes.

[Palisbo's attorney]: And you're willing to do that?

[Juror #1]: Yeah.

[Palisbo's attorney]: You can support that?

[Juror #1]: Yes.

Later in the jury selection process, a second prospective juror (Juror #2) was questioned about her ability to be impartial during Palisbo's trial in light of the fact that she was related to two police officers:

THE COURT: Would you be able to put aside any case that they discussed with you and judge this case based only on the evidence presented in the courtroom?

[Juror #2]: Yes.

THE COURT: And if a police officer were to testify, would you judge a police officer's -- give greater weight to the police officer's testimony simply by the fact they're a police officer?

[Juror #2]: No.

. . . .

THE COURT: Is there any reason that you know why you could not be a fair and impartial juror?

[Juror #2]: No.

Palisbo did not challenge either juror, and neither one was dismissed by the circuit court for cause.

E.   Trial Proceedings

During trial, Nakama testified that her car had been broken into on the morning of May 18, 2007, and that her schoolbag, containing her wallet, books, and a thumbdrive had been stolen. Nakama explained that her wallet contained credit cards, gift cards, cash, checks, and identification, and that one of the credit cards was the credit card produced by Palisbo at Codi Club later that day. At the close of the direct examination, and following defense counsel's election to ask no questions of Nakama, the circuit court gave the following limiting instruction: "Members of the jury, you have heard the

evidence that Miss Nakama's car was broken into. You are not to consider or to speculate as to who the person was who committed that offense."

After the parties rested, the circuit court and the parties discussed jury instructions. The court offered to reiterate the limiting instruction that it had provided following Nakama's testimony. Palisbo's attorney, however, requested that the instruction not be given:

> THE COURT: [T]he court has offered an instruction to the defense, something to the effect "you are instructed not to consider or speculate as to the identity of the person who broke into Ms. Nakama's car or who the person was that broke into Ms. Nakama's car.["] I understand the defense does not want that instruction?
>
> [Palisbo's attorney]: Correct.

The jury found Palisbo guilty on all counts. On April 7, 2008 the circuit court entered the judgment and sentenced Palisbo to five years of incarceration for each count, with terms to run concurrently, and to the mandatory minimum of three years and four months as a repeat offender for Counts I, II, and IV.

## II. POINTS OF ERROR

Palisbo asserts that "[t]he circuit court reversibly erred in admitting evidence in violation of [Hawaii Rules of Evidence (HRE) Rules ] 401, 402, and 403." Specifically, Palisbo argues that "[t]he circuit court erred in admitting irrelevant and prejudicial evidence regarding the break-in of Nakama's vehicle because such evidence was inadmissible under Rules 401, 402, and 403 of the [HRE]."

Additionally, Palisbo contends that "[t]he circuit court reversibly erred in failing to give a timely and adequate limiting instruction." Specifically, Palisbo argues that "[a]lthough the circuit court gave a limiting instruction, it did so only after the State introduced the incompetent evidence[,]" and that "the circuit court should have instructed the jury prior to the introduction of the evidence and during the charge to the jury. In addition, the limiting instruction failed to adequately instruct the jury as to the proper and improper use of the evidence."

Finally, Palisbo contends that the circuit court plainly erred in failing to excuse two jurors for cause. Specifically, Palisbo asserts that Juror #1 should have been excused for "beliefs, which were contrary to the constitutionally established principles of the burden of proof and the presumption of innocence," and Juror #2 should have been excused because of her "personal relationship with two relatives who were HPD officers."

## III. STANDARDS OF REVIEW

### A. Admissibility Of Evidence

"A trial court's determination that evidence is 'relevant' within the meaning of HRE Rule 401 (1993) is reviewed under the right/wrong standard of review." *State v. St. Clair*, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). In contrast, "[e]videntiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." *State v. Richie*, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (internal quotation marks, citations, and footnote omitted).

### B. Harmless Error

Hawai'i Rules of Penal Procedure (HRPP) provide, in relevant part, that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Haw. R. Pen. Pro. 52(a). The Hawai'i Supreme Court has stated that "[s]uch error, however, should not be viewed in isolation and considered purely in the abstract. It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled." *State v. Sprattling*, 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002) (internal quotation marks, citation, and brackets in original omitted).

Under the harmless error standard, the appellate court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Pauline*, 100 Hawai'i 356, 378, 60 P.3d 306, 328 (2002) (internal quotation marks and citation omitted).

"If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." *State v. Gano*, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted).

**C.    Jury Instructions, Not Objected To At Trial (Criminal)**

The standard of review for jury instructions that were not objected to at trial was clarified in *State v. Nichols*, 111 Hawai'i 327, 141 P.3d 974 (2006), where the Hawai'i Supreme Court held that

> although as a general matter forfeited assignments of error are to be reviewed under the HRPP Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.*, that the erroneous jury instruction was not harmless beyond a reasonable doubt.

*Id.* at 337, 141 P.3d at 984 (footnote omitted). Thus, the appellant must first demonstrate instructional error by rebutting the "presumption that unobjected-to jury instructions are correct." *Id.* at 337 n.6, 141 P.3d at 984 n.6; *accord State v. Eberly*, 107 Hawai'i 239, 250, 112 P.3d 725, 736 (2005). If the appellant is able to rebut this presumption, the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt because

> [e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.

*Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (brackets in original omitted) (quoting *State v. Gonsalves*, 108 Hawai'i 289, 293, 119 P.3d 597, 601 (2005)). If the State cannot demonstrate that the error was harmless beyond a reasonable doubt, the conviction must be vacated. *Nichols*, 111 Hawai'i at 337, 141 P.3d at 984.

**D.     Plain Error**

HRPP states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Haw. R. Pen. Pro. 52(b). Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted).

The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (quoting *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system--that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *Nichols*, 111 Hawai'i at 335, 141 P.3d at 982 (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74-75 (1993)).

**E.     Removal Of Juror For Cause (Abuse Of Discretion)**

An appellate court reviews the trial court's decision to pass a juror for cause under the abuse of discretion standard. *State v. Kauhi*, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997) (citation omitted).

### V. DISCUSSION

**A.     The Circuit Court Did Not Abuse Its Discretion In Admitting Testimony Regarding The Unauthorized Entry Of Nakama's Motor Vehicle**

Palisbo asserts that "[t]he circuit court erred in permitting the State to introduce evidence regarding the break-in of Nakama's vehicle" (the break-in evidence) because it was irrelevant and overly prejudicial. The record reflects, however, that Nakama's testimony regarding the break-in of her automobile and the theft of personal items, including the credit card used

by Palisbo, was relevant, and its probative value was not substantially outweighed by its prejudicial effect.

### 1.   The evidence of the car break-in was relevant

Relevant evidence is generally admitted. Haw. R. Evid. 402. Relevant evidence is excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Haw. R. Evid. 403. Thus, the evidence of the break-in and theft of Nakama's personal items, including the credit card used by Palisbo, is admissible if it is relevant and not overly prejudicial.[3]

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Haw. R. Evid. 401. Here, the break-in evidence was relevant to show, among other things, the absence of mistake or consent on the part of Nakama. The absence of consent is a necessary element for the charges in Counts I and III. *See* Haw. Rev. Stat. § 708-839.55(1) ("[a] person commits the offense of unauthorized possession of confidential personal information if that person intentionally or knowingly possesses, *without authorization*, any confidential personal information of another") (emphasis added); and Haw. Rev. Stat. § 708-8102(1) ("[a] person who takes a credit card from the person, possession, custody, or control of another *without the cardholder's consent* or who, with knowledge that it has been so taken, receives the credit card with intent to use it") (emphasis added).

Ultimately, the break-in evidence was relevant because it made the fact that the credit card in question was used and possessed by Palisbo without Nakama's consent more probable than it would have been without the evidence. Accordingly, the circuit court correctly found that the evidence was relevant. *See St. Clair*, 101 Hawai'i at 286, 67 P.3d at 785 (the right/wrong standard is used to determine relevance).

---

[3]      Palisbo does not argue on appeal that the introduction of the break-in evidence amounted to introduction of character, other crimes, wrongs or acts under HRE Rule 404. This is appropriate as "other crimes, wrongs, or acts" under Rule 404(b) are ordinarily those of the defendant. In this case, the State does not argue that Palisbo committed the break-in, but that the evidence is necessary to prove the victim's lack of consent.

2. **The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice**

Relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Haw. R. Evid. 403. "If probative value is great, the evidence will be admitted even though equally great prejudice must be risked." Addison M. Bowman, *Hawaii Rules of Evidence Manual*, 4-14 (2008-09 ed.). For example, in *State v. Sawyer*, the Hawai'i Supreme Court dismissed defendant's objection that the court erred in permitting the display of gruesome photographs. *Sawyer*, 88 Hawai'i at 329 n.7, 966 P.2d at 641 n.7 (approving receipt of fourteen color photographs depicting injuries inflicted with a broken vodka bottle to the face and head of an attempted murder victim, noting that "[c]ourts, traditionally, have great discretion in admitting such evidence"). *See also Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 141, 920 P.2d 334, 355 (1996) (declining to consider prejudice upon concluding that the evidence was "clearly probative" of facts of consequence in the case).

To balance the probative value and the prejudicial effect of evidence, Hawai'i courts examine "the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will probably rouse the jury to overmastering hostility." *State v. Uyesugi*, 100 Hawai'i 442, 463, 60 P.3d 843, 864 (2002) (internal quotation marks omitted). "[T]he determination of the admissibility of relevant evidence under HRE [Rule] 403 is eminently suited to the circuit court's exercise of its discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect[.]" *Uyesugi*. 100 Hawai'i at 463, 60 P.3d at 864 (quoting *State v. Janto*, 92 Hawai'i 19, 31, 986 P.2d 306, 318 (1999)). "The responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court." *Kaeo v. Davis*, 68 Haw. 447, 454,

719 P.2d 387, 392 (1986) (quoting *State v. Iaukea*, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975)).

Here, evidence of the break-in was necessary to establish when Nakama's credit card was taken, that it was taken without her consent, and a lack of mistake by Palisbo, in order to satisfy the elements of Counts I and III. In addition, the circuit court was concerned that if the jury was not informed as to the circumstances of how Nakama was dispossessed of her credit card, "the jury might speculate that somebody actually broke into her house[,]" and thus unwarrantedly attribute further bad acts to Palisbo.

Although Palisbo offered to stipulate that the credit card was taken, the prosecution is under no obligation to accept such a stipulation. *United States v. Chambers*, 918 F.2d 1455, 1462 (9th Cir. 1990) (court did not abuse its discretion in allowing evidence over defendant's offer to stipulate). In addition, the offer to stipulate that the card "was taken" did not address the State's need to establish that the card was taken without consent or mistake, or the circuit court's concern that, without some explanation of the circumstances, the jury might be misled into speculating about the methodology. Moreover, because the proffered evidence dealt with a crime for which Palisbo was not charged, the danger of overriding prejudice was substantially decreased. *See State v. Cordeiro*, 99 Hawai'i 390, 418, 56 P.3d 692, 720 (2002)(the danger of unfair prejudice was significantly diminished because the evidence related to a dissimilar crime).

Any prejudicial effect of admitting the break-in evidence was mitigated by the circuit court's limiting instruction that the jurors were "not to consider or to speculate as to who the person was who committed that offense." *See State v. Jhun*, 83 Hawai'i 472, 482, 927 P.2d 1355, 1365 (1996) (stating that "[a]s a rule, we presume that the jury followed all of the trial court's instructions"). Therefore, we conclude that the circuit court did not abuse its discretion in finding that the probative value of the evidence surrounding the loss of Nakama's credit card was not substantially outweighed by its prejudicial effect. *See Richie*, 88 Hawai'i at 37, 960 P.2d at 1245 (holding

12

that the abuse of discretion standard is used when balancing probative value and prejudicial effect of evidence).

3.   **Any error with regard to admission of the evidence was harmless**

Ultimately, "[i]f there is a plethora of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence will be deemed harmless." *State v. Buffalo*, 4 Haw. App. 646, 650, 674 P.2d 1014, 1018 (1983) (abrogated on other grounds by *State v. Sanchez*, 82 Hawai'i 517, 923 P.2d 934 (App. 1996). In light of the overwhelming evidence showing that Palisbo was guilty of the charged offenses beyond a reasonable doubt, any error in admitting the evidence was harmless.

The record shows that Palisbo had possession of Nakama's stolen credit card without her consent, that he attempted to use it to purchase merchandise without authorization, that when questioned he stated that the credit card was his, and that he signed the receipt above Nakama's name without her permission. Moreover, the disputed break-in evidence was of an offense for which Palisbo was not charged with, and the jury was specifically instructed not to speculate that Palisbo was the one who committed the offense.

When examined in light of the entire proceedings, and giving the disputed break-in evidence the effect to which the whole record shows it is entitled, it cannot be said that there was a reasonable possibility that the introduction of the break-in evidence contributed to Palisbo's conviction. *See Pauline*, 100 Hawai'i at 378, 60 P.3d 306, 328 (2002) (stating the harmless error standard). The evidence of Palisbo's guilt in this case was overwhelming; accordingly, the circuit court did not commit reversible error in admitting the break-in evidence.

B.   **The Circuit Court's Limiting Instruction Was Both Timely And Adequate**

Following introduction of the break-in evidence and the theft of the credit card, the circuit court admonished the jury that they were "not to consider or to speculate as to who the person was who committed that offense." Palisbo asserts that the

limiting instruction "was plainly erroneous,"[4] specifically that the circuit court's limiting instruction "should have been given prior to the introduction of the evidence and during the charge to the jury[,]" and that it "failed to adequately inform the jury on the proper and limited use of the evidence."

A limiting instruction must be given upon request if evidence is admissible as to one party or for one purpose, but not as to another party or another purpose, or if the evidence was admitted to show character, other crimes, wrongs or acts. Haw. R. Evid. 105, 404. Palisbo, however, did not request a limiting instruction, and the evidence was admitted for a specific purpose unrelated to HRE Rule 404. *See, supra,* n.3. Nevertheless, a limiting instruction "may also be necessary to prevent potential prejudice to a defendant." *State v. Murray,* 116 Hawai'i 3, 18-19, 169 P.3d 955, 970-71 (2007) (citing *State v. Konohia,* 106 Hawai'i 517, 528, 107 P.3d 1190, 1201 (App. 2005). While the circuit court's decision to provide a limiting instruction was appropriate under the circumstances, the assertion of error is without merit because we conclude that the limiting instruction was both timely and adequate.

### 1. Timeliness of the instruction

Palisbo contends that the circuit court's instruction was untimely because the court should have given the instruction prior to Nakama's testimony and during the charge to the jury.[5]

---

[4] Although Palisbo did not object to the limiting instruction, under *Nichols,* 111 Hawai'i at 337, 141 P.3d at 984, the standard of review is not strictly "plain error." *See* part III.C *supra,* for discussion.

[5] Palisbo references a single Nevada case in support of the proposition. In *Tavares v. State,* 117 Nev. 725, 30 P.2d 1128 (2001) the Nevada Supreme Court concluded that limiting instructions must be given immediately prior to the admission of the evidence and during final jury instructions.

> Therefore, to maximize the effectiveness of the instructions, we hold that the trial court should give the jury a specific instruction explaining the purposes for which the evidence is admitted immediately prior to its admission and should give a general instruction at the end of trial reminding the jurors that certain evidence may be used only for limited purposes.

117 Nev. at 733, 30 P.2d at 1133. The *Tavares* court went further, though, and concluded that a defense request that a limiting instruction not be given should govern. According to the court, "in unusual circumstances, the defense

14

Although this court has strongly suggested that trial courts give a cautionary instruction prior to and during the charge to the jury, *see State v. Chong*, 3 Haw. App. 246, 254, 648 P.2d 1112, 1118 (1982), the Hawai'i Supreme Court has clarified that there is no bright-line rule, and that the trial court has considerable discretion in determining whether and when to issue a limiting instruction. *Cordeiro*, 99 Hawai'i at 418-19, 56 P.3d at 720-21 (trial court's decision to issue a single limiting instruction at the conclusion of the trial did not jeopardize the defendant's right to a fair trial).

The record shows that the circuit court gave the limiting instruction immediately after Nakama's testimony, and that Palisbo's counsel affirmatively declined thereafter to have the court issue a further instruction. In light of that, and the fact that trial courts are afforded significant discretion over whether and when to issue a limiting instruction; that the court offered, and Palisbo refused, a break-in specific limiting instruction at the close of the case; that the court reincorporated its earlier instructions as part of a general instruction at the close of the case; and that the objected-to testimony carried with it only a limited potential for prejudice; we conclude that the court did not abuse its discretion, and that Palisbo was not deprived of his fundamental right to a fair trial.

### 2. Content of the instruction

Palisbo did not object at trial to the court's failure to incorporate instructions on the uses to which the break-in evidence could be put in its limiting instruction to the jury. The law requires only that "[e]vidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon*

---

may not wish a limiting instruction to be given for strategic reasons. *In those circumstances, the desire of the defendant should be recognized as he is the intended beneficiary of the instruction and is in the best position to evaluate its consequence.*" 117 Nev. at 731, 30 P.2d at 1132 (footnote omitted) (emphasis added). Here, Palisbo's counsel refused a further limiting instruction as part of the final jury instructions. *See*, *supra*, discussion at section I.E.

*request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." Haw. R. Evid. 105 (emphasis added). The Hawai'i Supreme Court has stated that when there is no objection to a jury instruction, it is the duty of the appellant to demonstrate instructional error by rebutting the "presumption that unobjected-to jury instructions are correct[.]" *Nichols,* 111 Hawai'i at 337 n.6, 141 P.3d at 984 n.6.

Palisbo argues that the circuit court's limiting instruction was inadequate because it "failed to specify in what manner the jurors were able to use the evidence[,]" and "did not instruct the jurors that it could not hold the evidence against Palisbo in anyway [sic]." In support, Palisbo contends that the jury "could have inferred from the evidence that Palisbo was a person of bad character, and thus, the State's witnesses were more credible."

Palisbo understates the force of the circuit court's prohibition against using Nakama's testimony as a basis from which to speculate who committed the break-in. The instruction prohibited jurors from attributing the break-in to Palisbo, and, hence, from attributing it to Palisbo's character or propensity. As the jury was not allowed to consider who perpetrated the acts, all that remained was the fact that the break-in happened and that Nakama's personal items, including the credit card, were taken.

We reiterate our recommendation that trial courts give a cautionary instruction regarding the restrictive use of "other crimes, wrongs or bad acts" evidence prior to and during the charge to the jury.[6] *Chong,* 3 Haw. App. at 254, 648 P.2d at 1118. In the instant case, however, the given instruction (to not speculate as to who might have committed the break-in) had the effect of limiting the uses to which the break-in testimony could be put. Most significant, it prevented the jury from speculating that Palisbo might have committed the break-in. *See*

_____

[6] In *Chong,* we recommended that the initial instruction be offered *before* introduction of the evidence. 3 Haw. App. at 254, 648 P.2d at 1118. Our recommendation today is less specific, more consistent with the Supreme Court's ruling in *Cordeiro,* and allows the trial court the discretion to determine the precise timing of the initial instruction.

*Jhun*, 83 Hawaiʻi at 482, 927 P.2d at 1365 (Hawaiʻi appellate courts will "presume that the jury followed all of the trial court's instructions.")

As such, Palisbo fails to overcome the presumption that the jury followed the logical consequences of the court's instruction. Having not objected to or requested a more specific limiting instruction at trial, Palisbo fails also to rebut the presumption that the unobjected-to jury instruction was correct. Therefore, the circuit court did not reversibly err in failing to enumerate the permissible uses of HRE Rule 403 evidence.

**C. The Circuit Court Did Not Plainly Err In Failing To Excuse Two Jurors For Cause**

Palisbo contends that the circuit court "plainly erred in failing to excuse two jurors for cause." Specifically, Palisbo argues that, even though he failed to object to either juror, the circuit court should have *sua sponte* removed prospective Juror #1 for beliefs "which were contrary to the constitutionally established principles of the burden of proof and the presumption of innocence," and prospective Juror #2 for her "personal relationship with two relatives who were HPD officers." Palisbo's arguments are without merit.

Palisbo cites to *Kauhi*, 86 *Hawaiʻi* 195, 948 P.2d 1036 for support. In *Kauhi*, however, the court had refused a defense objection for cause to the seating of a prosecution employee as a juror. As a result, the defense used its final peremptory challenge, and was unable to challenge other subsequent jurors. *Id.* at 198, 948 P.2d at 1039. The fact that Palisbo made no objection to either juror below, and that he retained unused peremptory challenges at the close of voir dire, fundamentally distinguishes this case from *Kauhi*. A defendant "cannot sit in silence and accept a juror as unprejudiced and fair and then subsequently allege error in the retention of the same juror." *State v. Graham*, 70 Haw. 627, 634, 780 P.2d 1103, 1107-08 (1989) (internal quotation marks omitted); *see also State v. Iuli*, 101 Hawaiʻi 196, 205, 65 P.3d 143, 152 (2003) (defendant failed to meet his burden to establish that his right to exercise a peremptory challenge was denied or impaired, having made "no

proffer that he would have excused another prospective juror," and having not requested additional peremptory challenges).

Although Juror #1 initially stated that she thought it unfair that Palisbo did not have to prove his innocence, when asked if she would be willing to support the fact that Palisbo did not have to prove his innocence and whether she understood that she could not hold it against him, Juror #1 responded "yes." Additionally, despite Palisbo's assertion that Juror #2 was biased because of her personal relationship with two HPD officers, when asked if she would give greater weight to testimony proffered by police officers and if there was any reason that she could not be impartial, Juror #2 stated "no."

It is axiomatic that the court is "not bound by a prospective juror's statement that he or she will be fair and impartial." *Kauhi*, 86 Hawai'i at 199, 948 P.2d at 1040. Unlike the case in *Kauhi*, however, where the appearance of impropriety was evident in the juror's employment relationship, the record of *voir dire* here is more similar to that in *Graham*, where the Hawai'i Supreme Court observed that

> the record reflects the ambiguous and at times contradictory responses of the challenged juror to queries regarding her willingness to lay aside impressions or opinions formed from earlier media accounts. Still, this is not unusual on voir dire examination . . . . Her opinions could hardly be characterized as strong and deep impressions which close the mind against the testimony that may be offered in opposition to them.

70 Haw. at 634-35, 780 P.2d at 1108 (internal quotation marks, citation, and footnote omitted).

"When a juror is challenged on grounds that [they have] formed an opinion and cannot be impartial, the test is whether the nature and strength of the opinion are such as in law necessarily raise the presumption of partiality." *Id.* at 633, 780 P.2d at 1107 (internal quotation marks and elipsis omitted). "[T]he reviewing court is bound by "the proposition that findings of impartiality should be set aside only where prejudice is manifest." *Id.* at 634, 780 P.2d at 1107 (citation and internal quotation marks omitted). In the instant case, the evidence of prejudice is ambiguous and certainly not manifest; consequently, the court did not err in failing to excuse the jurors for cause.

## V. CONCLUSION

The April 7, 2008 Judgment of Conviction and Sentence entered in the circuit court is affirmed.

DATED:  Honolulu, Hawai'i, April 20, 2010.


On the briefs:

George A. Burke
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge